## Ex parte Thomas Hiram WILLIAMS.

### No. 1292–89.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 21, 1990.

Terrence McDonald, San Antonio, for appellant.

W.C. Kirkendall, Dist. Atty. and Dwight E. Peschel, Asst. Dist. Atty., Seguin, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellant was indicted for attempted capital murder, and filed an application for writ of habeas corpus prior to trial, alleging his prosecution was barred by his previous conviction for criminal contempt arising out of the same facts. The trial court denied relief, and the Court of Appeals affirmed. *Williams v. State*,[1] 775 S.W.2d 812 (Tex.App.—San Antonio 1989).

We granted appellant's petition to determine whether conviction for criminal contempt for violating an order entered in a civil proceeding bars criminal prosecution for offenses based on the same acts which

---

**1.** So styled by the Court of Appeals. Because this case involves an appeal from denial of relief in a pretrial application for writ of habeas corpus, the correct style should be Ex parte Williams.

established violation of the civil order. We will affirm the Court of Appeals.

Appellant filed a civil suit against his neighbors, the Buffingtons, concerning a property dispute which had become acrimonious. Mutual temporary orders were entered restraining the parties from causing or threatening to cause physical contact or bodily injuries to each other. The Buffingtons subsequently sought to have appellant found in contempt for violating one of these orders, in that appellant had shot and injured two of the Buffingtons. The trial court conducted a hearing on the Buffingtons' motion, found appellant in contempt for violating the previously entered restraining order,[2] and assessed punishment at 30 days in jail and a fine of $500 for the bodily injury violation.[3] Appellant has since served this sentence.

Subsequent to the hearing but prior to entry of the contempt order, appellant was indicted for attempted capital murder in that he intended to cause the deaths of more than one person when he shot the Buffingtons. The indictment was returned into the same trial court in which appellant had been found in contempt. Appellant filed a pretrial application for writ of habeas corpus, contending that his contempt adjudication barred his criminal prosecution pursuant to the double jeopardy provisions of both the Texas and United States constitutions. Appellant claimed the contempt adjudication was a lesser included offense of the attempted capital murder prosecution because it "was based on the identical act alleged in the indictment." The trial court denied relief.

The Court of Appeals reviewed several cases from other jurisdictions concerning criminal prosecutions after contempt adjudications based on the same underlying acts, and noted that the State was not involved in both prosecutions here. The court ultimately applied the *Blockburger*[4] test to conclude that the contempt adjudication was not a lesser included offense of the attempted capital murder prosecution, in that each required proof of an element not found in the other.

The United States Supreme Court has never directly addressed the question of whether a conviction for criminal contempt is the "same offense" as conviction for another statutorily defined crime based on the same acts.[5] That Court has also never directly addressed whether a judgment obtained in a civil suit between private parties can invoke the protection of the double jeopardy clause, although dicta in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487 (1989), indicates it cannot.[6]

In *Ex parte Looper*, 61 Tex.Crim. 129, 134 S.W. 345 (App.1910), this Court relied

2. The restraining orders also included provisions relating to approaching each other's property. These provisions do not affect the double jeopardy claims here, although the trial court found violation of some of these provisions as well.

3. Another 30 days in jail and $750 in fines were assessed for the other violations.

4. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

5. In *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), the Court held that a plea of guilty does not waive a double jeopardy claim. *Menna* involved a contention that the government could not prosecute a statutory criminal offense after having obtained a criminal contempt conviction based on the same facts. Although the per curiam opinion contained a footnote indicating sympathy with the merits of the case, the opinion did not actually address those merits.

While discussing the validity of a contempt conviction in *Jurney v. MacCracken*, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802 (1935), and of a statute in *In re Chapman*, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154 (1897), the Court stated that "the same act may be an offense against one jurisdiction and also an offense against another; and indictable statutory offenses may be punished as such, while the offenders may likewise be subjected to punishment for the same acts as contempts, the two being diverso intuitu, and capable of standing together." 55 S.Ct. at 380, and 17 S.Ct. at 681. However, neither of these cases concerned a second prosecution after a conviction. The discussions were merely responding to claims that existence of another statute or contempt power covering the same acts rendered invalid the statute or contempt power under review.

6. "The protections of the Double Jeopardy Clause are not triggered by litigation between private parties."

on dicta in *Ex parte Allison,* 99 Tex. 455, 90 S.W. 870 (1906), to hold that conviction for a criminal offense did not bar adjudication for contempt arising from the same acts.[7] Two Courts of Civil Appeals have conversely held that a criminal conviction *does* bar a subsequent contempt adjudication for violation of an order entered in a suit between private parties, *Ex parte Englutt,* 619 S.W.2d 279 (Tex.Civ.App.—Texarkana 1981, no writ); *Ex parte Brown,* 574 S.W.2d 618 (Tex.Civ.App.—Waco 1978, no writ), but both those cases relied upon a misreading of *Menna,* as noted by the Court of Appeals in this cause.

Most other jurisdictions addressing the criminal contempt/criminal conviction problem have concluded that double jeopardy does not bar convictions for both, but have relied on a variety of rationales. Some, as the Court of Appeals did here, relied on *Blockburger* to conclude the convictions did not involve the "same offense" because each contained an element the other did not. *Commonwealth v. Allen,* 506 Pa. 500, 486 A.2d 363 (1984); *Commonwealth v. Gallarelli,* 372 Mass. 573, 362 N.E.2d 923 (1977); *People v. Totten,* 118 Ill.2d 124, 113 Ill.Dec. 47, 514 N.E.2d 959 (1987); *People v. Lucas,* 170 Ill.App.3d 164, 120 Ill. Dec. 481, 524 N.E.2d 246 (1988); *People v. Allen,* 787 P.2d 174 (Colo.App.1989). Others held that contempt by its nature was a different offense from other criminal convictions, because its purpose is to preserve the integrity of the court system itself, and not directly to preserve the "peace and dignity of the State." *State v. Newell,* 532 So.2d 1114 (Fla.App.1988); *State v. Sammons,* 656 S.W.2d 862 (Tenn.Crim.App. 1982). One court relied on statutes specifically stating that sentences for contempt pursuant to the relevant statute were to be in addition to those for any other offenses encompassed by the acts committed. *People v. McCartney,* 141 Mich.App. 591, 367 N.W.2d 865 (1985). See *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

Three courts of other jurisdictions have recently held that a criminal contempt conviction barred prosecution for another criminal offense based on the same acts. *People v. Rodriguez,* 162 Ill.App.3d 149, 113 Ill.Dec. 121, 514 N.E.2d 1033 (1987), found the offenses were the same under a *Blockburger* analysis. *State v. Thompson,* 294 Or. 528, 659 P.2d 383 (1983), relied on Oregon joinder statutes to find a bar even though the contempt conviction was sought by a private litigant. *State v. Hope,* 449 So.2d 633 (La.App.1984), held that double jeopardy barred the other criminal prosecution because the "same evidence" test used in Louisiana double jeopardy analysis had been met.

Two questions are presented in this case. First, are the contempt conviction and the attempted capital murder prosecutions the "same offense," and, second, do the double jeopardy protection of the respective constitutions apply to a conviction sought by a private citizen, not on behalf of the State?

It is well established that a contempt conviction is "criminal" if it punishes for past violations, and "civil" if it attempts to coerce future action. *Hicks v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Classification of contempt into criminal and civil, direct and constructive (indirect), affects the type of process that is due before the contempt adjudication is deemed valid. See *Young v. United States ex rel. Vuitton et fils,* 481 U.S. 787, 107 S.Ct. 2124, 2132–33, 95 L.Ed.2d 740 (1987); *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) (holding that a jury trial is required before adjudication for "serious" criminal contempt, but not for contempt resulting in punishment of less than six months); *Ex parte Daniels,* 722 S.W.2d 707 (Tex.Cr.App.1987).

The Sixth Amendment of the United States Constitution provides that "in all criminal prosecutions the accused shall en-

---

7. The opinion in *Looper* did not indicate whether the injunction violated had been sought by the State or a private party. *Looper* involved the converse factual situation (statutory criminal conviction before the contempt conviction), and was decided before the federal double jeopardy protections were made applicable to the states in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), so is not controlling here.

joy the right to ... an impartial jury," yet this right has been held to apply to the States, as qualified by the Fourteenth Amendment, only where punishment of confinement for more than six months is possible. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The Fifth Amendment protection from "be[ing] subject for the same offence to be twice put in jeopardy of life or limb" has similarly been construed to allow two convictions for the same offense as long as different "sovereigns" obtain them. *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). Also, the test for what constitutes the "same offense" can differ according to whether single or successive prosecutions are involved. *Grady v. Corbin,* 495 U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *Garcia v. State* (Tex. Cr.App. No. 1441–88, delivered June 6, 1990). Thus, the apparent protection provided by a constitutional provision can be qualified according to the context of the provision. Even though "criminal contempt is a crime in the ordinary sense," *Bloom,* 88 S.Ct. at 1481, it might not be a "same offense" within the scope of the double jeopardy clause. The double jeopardy protections were provided to prevent one sovereign from twice placing a person in jeopardy of life and limb, not merely to protect an individual from suffering two punishments for committing one act. To hold otherwise would preclude two states, *Heath,* or the federal and a state government, *Abbate,* from imposing separate punishments for the same acts.[8] However, different agents of the same sovereign are barred from obtaining separate convictions for the "same offense" even though the agents represent different political divisions of the sovereign. *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). Cf. *Benard v. State,* 481 S.W.2d 427 (Tex.Cr.App.1972)[9].

In this cause the contempt conviction was sought by a private party, not on behalf of the State. Although the power of the State was used to obtain the punishment, through the state court and jail, the State did not seek this punishment.[10] We believe the jeopardy provisions protect only against prosecutions by persons on behalf of the same sovereign, and the contempt conviction here, while "criminal" in nature, is not the "same offense" as the attempted capital murders the State is now seeking to prosecute. Whether the crimes would pass a *Blockburger* analysis is not relevant.[11]

**8.** The primary rationale in *Abbate, Heath, Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and other "different sovereign" cases is that crimes committed against different sovereigns are different offenses, even though their elements and the acts on which they are based may be identical. In that sense, they are not "same offenses" for purposes of double jeopardy.

**9.** *Benard* concerned a prosecution for driving while license suspended after conviction for driving without a license. The initial conviction had been obtained based on the filing of a complaint by a peace officer, but the State argued that any citizen could have filed the complaint and obtained the conviction without knowledge of any prosecutor. This Court held the subsequent prosecution was barred because the conviction was obtained "In the name and by authority of the State of Texas," and would have been barred even if the prosecution had been based on a complaint filed by a private citizen.

**10.** In *Young v. U.S. ex rel Vuitton,* supra, the United States Supreme Court noted that federal prosecutions for criminal contempt arising out of violation of court orders in civil litigation are separate from that civil suit, and are brought on behalf of the government. The court exercised its supervisory powers to preclude appointment of attorneys of a party to the civil suit as special prosecutor of the criminal contempt proceeding. Only Justice Blackmun indicated this should be based on a constitutional right to due process.

We have found nothing in our rules of procedure or prior caselaw which requires that prosecution of criminal contempt arising out of Texas civil suits be deemed a separate proceeding from that suit, or be brought on behalf of the State.

**11.** It is not necessary to decide, in this cause, whether a criminal contempt conviction obtained by an agent of the State would bar a subsequent criminal prosecution by the State for other offenses arising from the same acts. We leave for another case the question of whether all contempt adjudications, as offenses against the court, are by their nature "different offenses" from statutory violations committed "against the peace and dignity of the State." See *Looper,* supra.

The judgments of the Court of Appeals and the trial court are affirmed.

TEAGUE, J., concurs in the result.

BERCHELMANN and STURNS, JJ., not participating.