**Guy Earl BEVILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–91–303 CR.**

Court of Appeals of Texas, Beaumont.

Dec. 9, 1992.

Barry R. Bryan, Law Office of Jerry N. Whiteker, Lufkin, for appellant.

Ed C. Jones, Angelina County Atty., Lufkin, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the misdemeanor offense of Theft. Appellant waived trial by jury. The trial before the court began on October 14, 1991. At the close of all testimony, the trial court requested briefs on particular issues of law from the respective parties. The trial was reconvened on November 20, 1991 with the trial court finding appellant guilty. Sentence was pronounced on December 4, 1991. The trial court assessed appellant a fine of $500. The pertinent portion of the information charging appellant with Theft reads as follows:

> ... Guy Earl Bevill, Defendant, did then and there in said County and State, intentionally and knowingly appropriate by acquiring or otherwise exercising control over property, to-wit: 1 bottle of vitamins and 1 bottle of Peri–Colace of the value of more than twenty dollars ($20.00) but less than two hundred ($200.00) dollars from Jack Eckerd Corporation d/b/a Eckerd Drug # 870 the owner thereof, without the effective consent of the owner and with intent to deprive said owner of said property.

Appellant presents this Court with two points of error, *viz:*

> POINT OF ERROR I: The evidence at trial was insufficient to prove an essential element of theft beyond a reasonable doubt thereby requiring reversal and dismissal of the prosecution.
> POINT OF ERROR II: The lower court erred in finding Appellant guilty of theft in this circumstantial evidence case where under the circumstances the evidence is insufficient to exclude every reasonable hypothesis except the guilt of the accused.

Addressing appellant's points in inverse order, we begin with point of error two regarding the existence of an alternate reasonable hypothesis. The transcript and statement of facts reflect that although the evidentiary portion of the trial began on October 14, 1991, the trial court recessed the case prior to adjudicating appellant's guilt. The trial then resumed on November 20, 1991 at which time, following arguments by the State, counsel for appellant, and by appellant himself, the trial court proceeded with adjudicating appellant's guilt and indeed found appellant guilty of the Class B misdemeanor of Theft.

Appellant contends in his brief that facts in the case raise an alternate reasonable hypothesis other than appellant's guilt. Appellant fails to recognize that during the period in which the trial was recessed, on November 6, 1991 to be exact, the Court of Criminal Appeals handed

down *Geesa v. State,* 820 S.W.2d 154, 156, 163 (Tex.Crim.App.1991). *Geesa* explicitly overruled a long line of cases including *Wilson v. State,*[1] upon which appellant relies as authority, with regard to the "reasonable hypothesis analytical construct." *Geesa, supra* at 161. The Court in *Geesa,* however, limited the prospective application of the new holdings to cases tried after November 6, 1991, the date of the Court's decision. In *Geesa,* the Court reasoned that such a "limited prospectivity" was appropriate because, inter alia, the newly announced rules were procedural in nature and did not confer on defendants any greater constitutional protections than existed before. *Geesa, supra* at 165.

■ In the instant case, although the trial commenced prior to the decision in *Geesa, Geesa* was fully two weeks old when the trial court found appellant guilty. Because this was a bench trial, no jury instructions exist in the record before us. When a trial is to a judge sitting without a jury, we must presume that the judge applied the correct law to the facts presented to him. *Wallace v. State,* 770 S.W.2d 874, 876 (Tex.App.—Dallas 1989, pet. ref'd). In the instant case, the correct law at the time the trial court engaged in its function as the adjudicator of appellant's guilt or innocence was *Geesa.* As *Geesa* abandoned the "alternate reasonable hypothesis" method of appellate review with regard to analyses of the sufficiency of the evidence to support convictions, appellant's second point of error is without merit and is overruled.

Turning to appellant's first point of error, we recognize that in reviewing cases for evidentiary sufficiency we must determine whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that each essential element of the crime had been proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa, supra.* As we have pointed out on many occasions, *Jackson* provides the following guidance to appellate courts with regard to this standard:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. (emphasis theirs)

*Jackson, supra,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

■ Under his first point of error, appellant argues that the State failed to prove that Eckerd Drug was the owner of the items allegedly stolen, and that the items alleged to have been stolen were not proven to have actually been stolen. While the authorities relied on by appellant under this point of error provide correct statements of the law in the context of theft offenses,[2] the facts of those cases are completely distinguishable from those in the instant prosecution.

In *Bibbs,* copper pipe was stolen from the premises of a metal products company. Police investigation revealed similar copper pipe was sold to a second metal dealer by appellant the day after the copper pipe was last seen at the complainant's business. The Court of Criminal Appeals held that the State failed to prove that the copper pipe missing from the complainant's metal products business was the same pipe that appellant had sold to the second metal dealer. In the instant case, eyewitness testimony reflects that as appellant walked through a security device immediately prior to exiting the store, the store's security alarm went off. The sounding of the alarm indicated that appellant was attempting to exit the store with store merchandise that

---

1. 654 S.W.2d 465 (Tex.Crim.App.1983) (opinion on rehearing).

2. *Bibbs v. State,* 658 S.W.2d 618 (Tex.Crim.App. 1983); *Bryant v. State,* 627 S.W.2d 180 (Tex. Crim.App.1982); *York v. State,* 511 S.W.2d 517 (Tex.Crim.App.1974).

had not been "detoned." Detoning of the store's merchandise took place when said merchandise was paid for. Testimony further indicated that small tags attached to certain merchandise are what trigger the security alarm if the merchandise has not been detoned by a cashier at the check-out stand.

Testimony from the store's manager, James Modisette, indicated that very shortly after the alarm sounded Mr. Modisette approached appellant and asked appellant if he had anything that had not been checked out, or had merchandise that had not been detoned. Appellant replied that all he (appellant) was carrying was his car keys. Mr. Modisette then related the following:

A. (Mr. Modisette) ... And at that point I asked him to step back through the gate. He got extremely nervous and headed on back into the store. I followed him and saw him drop off two items, some laxative and some vitamins in a shelf, which I immediately picked up, and followed him back up to the store.

. . . .

Q. (the State) And when he proceeded back into the store, you followed him?

A. Yes, sir.

Q. How far behind him were you?

A. Maybe—I was like three or four feet. I was almost walking beside him, you know.

Q. Okay. And would you please describe at what part of the store that he produced the two items that you mentioned, and how did he go about producing those, where did they come from?

A. They came from his front pocket, and he was, oh, twenty or thirty feet down an aisle. He was about halfway down an aisle—a little—a little further than halfway down an aisle, and took the merchandise out of his pocket as he was walking, you know, and dropped it into a shelf.

Q. And did you pick those items up?

A. Yes, sir, immediately.

Q. Okay. And what were the two items that you recovered?

A. It was Your Life Vitamins was one item and some—the other was a laxative, Peri–Colace.

The above direct eyewitness testimony fully described the property recovered after appellant removed the items from his (appellant's) pockets and discarded them on a shelf. The testimonial description of the unlawfully appropriated merchandise is identical to the items alleged in the information charging appellant with the crime.

The *Bryant* case is also distinguishable. The Court of Criminal Appeals held, inter alia, that evidence was insufficient to show the alleged owner was indeed the owner of some missing plants at the time of the alleged taking. The facts in *Bryant* indicated that the defendant and the owner contracted to have defendant do some landscaping work around the owner's place of business. Upon the defendant's request, the owner gave the defendant some money with which to purchase plants for the landscaping job. The plants were purchased and stored behind the owner's building. Some time later, the owner noticed some of the plants were being "stolen" at night. Further testimony from the owner showed that the defendant was afraid the plants would be stolen, so the defendant offered to take the plants to his home for safekeeping. Witnesses including the owner's wife and daughter observed the defendant loading the plants into his (defendant's) truck, but did not do or say anything to the defendant to stop him. The evidence further indicated that the defendant continued to return to the job site after removing the plants and resumed landscaping the property. Furthermore, the defendant testified that he (defendant) purchased the plants with his own money, that the plants were removed for security reasons and that the plants would be returned to the job site when needed.

It is easy to see that the "ownership" problem in *Bryant* with regard to the sufficiency of the evidence arose from the status of the defendant as a "contractor" and, therefore, an "owner" of a kind in his own right, at least until the work contracted for by the alleged owner had been fully com-

pleted. The facts in the instant case are in no way even remotely analogous. Mr. Modisette testified that on the date in question he was working as the assistant manager of the Eckerd Store #870 located in Angelina County. Mr. Modisette further stated that appellant did not have his (Modisette's) consent on that date to take the two items of property without paying for them.

We recognize that the better pleading practice is to allege "special" ownership in a natural person acting for the corporation, rather than alleging the corporation itself as the owner. *Compton v. State,* 607 S.W.2d 246, 250 (Tex.Crim.App.1980) (opinion on rehearing), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981). However, the Court of Criminal Appeals has held that ownership can be alleged in a corporation. *See Wells v. State,* 608 S.W.2d 200, 202 (Tex.Crim.App.1980) (opinion on rehearing); *Middleton v. State,* 476 S.W.2d 14, 15–17 (Tex.Crim.App.1972). The testimony clearly indicates that the bottle of vitamins and the bottle of Peri–Colace were the property of Eckerd Drug #870 and that Mr. Modisette, in his capacity of assistant manager of Eckerd Drug #870 had "greater right to possession of the property"[3] than appellant on the date in question.

Finally, the *York* case is not applicable to the facts shown in the instant case. In *York,* the owner of the item allegedly stolen, a traffic control barricade, was unable to testify that the barricade the police seized from the possession of the defendant was his (owner's) property. The Court of Criminal Appeals pointed out that the seized barricade was never introduced into evidence; that the owner never saw the barricade in question in order to identify it as belonging to his company; that the barricades did not have serial numbers or other individualized identifying marks; nor did the police officer who seized the barricade place his identifying mark on it.

In the instant case, the testimony clearly reflects that Mr. Modisette personally witnessed appellant discard the bottle of vitamins and the bottle of laxative, and upon observing this, Mr. Modisette immediately retrieved the items and kept them for some time. We reiterate that the evidence reflects that the items that appellant attempted to leave the store with were fully identified as belonging to Eckerd Drug #870. Point of error one is overruled.

Having found no merit in either of appellant's points of error, we affirm the judgment and sentence of the trial court.

AFFIRMED.

---

**3.** Tex.Penal Code Ann. sec. 1.07(a)(24) (Vernon Supp.1992) defines the term "owner" as a person who:

  (A) has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor; or

  (B) is a holder in due course of a negotiable instrument.