**Ex parte Thomas J. JACKSON.**

No. 14–95–00530–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 22, 1995.

John W. Wiggins, Houston, for appellants.

Brent Dobbs, Houston, Michael Mankins, Houston, for appellees.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

LEE, Justice.

In this original proceeding, Thomas J. Jackson, relator, seeks a writ of habeas corpus alleging he is illegally restrained of his liberty by virtue of a judgment of contempt and a commitment order issued by the 309th Judicial District. Relator alleges: (1) the trial court erred in committing relator to jail because the commitment violated the double jeopardy provisions of the United States and Texas Constitutions; (2) the trial court erred in imposing criminal penalties on relator for acts not proved beyond a reasonable doubt; and (3) section 14.40(g) of the Texas Family Code is unconstitutional under the due process clause of the United States Constitution as applied in criminal contempt proceedings. We deny relator's writ of habeas corpus.

On March 7, 1991, relator was ordered by the 309th District Court to make monthly child support payments in the amount of $300.00 per month. On May 6, 1994, relator was charged by information in County Criminal Court No. 9 with the offense of criminal non-support.

Eight days later, on May 14, 1994, the Attorney General's office filed a motion to enforce past due child support on behalf of Denice Grevious, relator's ex-wife and the mother of S.M.J. The motion, filed in the 309th, alleged that relator had failed to pay child support from October 1, 1993, through March 31, 1994. The motion asked the court to hold relator in contempt and punish him by confinement for not more than six months and/or by fine of not more than $500.00 for each violation. The motion also asked that relator remain confined until he paid all ar-rearages, interest, attorney's fees, and court costs.

On November 1, 1994, relator pled nolo contendere to the criminal non-support charge. The criminal court deferred adjudication of guilt and ordered relator placed on probation for two years subject to certain conditions. One of those condition was that relator pay $150.00 per month in restitution beginning on December 1, 1994. The court did not set a total amount to be paid, nor did it place a time limit on the payments. The restitution was ordered paid to Harris County Child Support Office for Denice Grevious.

On May 11, 1995, after a hearing, the 309th District Court found relator in contempt for failure to pay child support on the following dates: October 1, 1993; November 1, 1993; December 1, 1993; January 1, 1994; February 1, 1994; and March 1, 1994. Relator was ordered confined in the Harris County jail from the date of commitment through November 7, 1995. The court further ordered that relator remain confined after November 7, 1995 until he: (1) paid $5,500.00 to the movant towards the child support arrearage; and (2) paid court costs in the amounts of $164.00 and $63.00.

On May 15, 1995, relator filed a petition for writ of habeas corpus with this court. We granted the petition, ordered relator released on bond, and set the case for oral argument.

■ Relator first contends that the "Order Holding Respondent In Contempt For Failure To Pay Child Support And For Commitment And Judgment For Unpaid Child Support" is void because it violates the double jeopardy provisions of the United States and Texas Constitutions. Relator's argument is based on the fact that he pled nolo contendere to the criminal non-support charge in the information of May 6, 1994. The information stated:

> ... that *THOMAS JACKSON*, hereafter styled the defendant, on or about *April 1, 1994*, did then and there unlawfully[,] intentionally and knowingly fail to provide support for his child, [S.M.J.], a child younger than eighteen years of age.

Relator contends that because he pled no contest to the charge of criminal non-support

brought by the State and was punished, the order holding him in contempt is void because he has already been convicted or punished for the acts for which the trial court found him in contempt. In response, the attorney for Denice Grevious argues that relator's double jeopardy claim is without merit in light of *Ex parte Williams,* 799 S.W.2d 304 (Tex.Crim.App.1990).

In *Williams,* Thomas Hiram Williams filed a civil suit against his neighbors, the Buffingtons. *Id.* at 305. The suit concerned a property dispute over which Williams and the Buffingtons had become quite bitter. Ultimately, mutual temporary restraining orders were entered to enjoin the parties from threatening to cause physical contact or bodily injuries to each other. Eventually, the Buffingtons sought a contempt order against Williams alleging that Williams had violated the order by shooting and injuring two of the Buffington family members. The trial court held a hearing on the contempt motion and found Williams in contempt and assessed punishment at 30 days in jail and a $500 dollar fine for the bodily injury violation.

Prior to the entry of the contempt order, but after the contempt hearing, Williams was indicted for attempted capital murder. *Id.* The indictment alleged that Williams intended to cause the deaths of more than one person when he shot the Buffington family members. Williams filed a pretrial application for writ of habeas corpus alleging that the criminal prosecution was barred by the contempt adjudication pursuant to the double jeopardy provisions of the United States and Texas Constitutions. The trial court denied the relief requested by relator. The court of appeals affirmed the trial court's ruling, first noting that the State was not involved in

both prosecutions, and concluding that double jeopardy was not violated based on the application of the test promulgated first in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Williams v. State,* 775 S.W.2d 812, 815–17 (Tex.App.—San Antonio 1989), *aff'd,* 799 S.W.2d 304 (1990).

The Texas Court of Criminal Appeals granted Williams' petition for discretionary review and began by reviewing caselaw from other jurisdictions confronted with the "criminal contempt/criminal conviction" problem. *Williams,* 799 S.W.2d at 306. The court found that most jurisdictions have concluded that double jeopardy does not apply to the problem, but have relied on a variety of rationales in reaching their decisions. *Id.*[1] The Texas Court of Criminal Appeals, though agreeing with the result reached by those jurisdictions that found no double jeopardy violation, rejected the rationales applied in the other jurisdictions and held:

> In this cause the contempt conviction was sought by a private party, not on behalf of the State. Although the power of the State was used to obtain the punishment, through the state court and jail, the State did not seek this punishment. We believe the jeopardy provisions protect only against prosecutions by persons on behalf of the same sovereign, and the contempt conviction here, while "criminal" in nature, is not the "same offense" as the attempted capital murder the State is now seeking to prosecute. Whether the crimes would pass a *Blockburger* analysis is not relevant.

*Id.* at 307. In other words, even if the contempt offense and the criminal offense might not pass *Blockburger,* when contempt

---

1. One of the rationales used by courts in other jurisdictions finding that double jeopardy does not bar convictions for both contempt and criminal prosecution is the application of *Blockburger*. *Ex parte Williams,* 799 S.W.2d 304, 306 (Tex.Crim.App.1990) (citing *People v. Allen,* 787 P.2d 174 (Colo.App.1989); *People v. Lucas,* 170 Ill. App.3d 164, 120 Ill.Dec. 481, 524 N.E.2d 246 (1988); *People v. Totten,* 118 Ill.2d 124, 113 Ill.Dec. 47, 514 N.E.2d 959 (1987); *Commonwealth v. Gallarelli,* 372 Mass. 573, 362 N.E.2d 923 (1977); *Commonwealth v. Allen,* 506 Pa. 500, 486 A.2d 363 (1984)). Other jurisdictions have held that contempt, by its very nature, was a different offense from other criminal convictions because its purpose is to preserve the integrity of the court system and does not directly preserve the "peace and dignity of the State" as do criminal convictions. *Williams,* 799 S.W.2d at 306 (citing *State v. Newell,* 532 So.2d 1114 (Fla.App.1988); *State v. Sammons,* 656 S.W.2d 862 (Tenn.Crim.App.1982)). One court relied on state statutes that specifically stated that sentences for contempt pursuant to statute were in addition to those for any other offenses encompassed by the acts committed. *Williams,* 799 S.W.2d at 306 (citing *People v. McCartney,* 141 Mich.App. 591, 367 N.W.2d 865 (1985)).

is sought by a private party, there is no double jeopardy bar based on the previous criminal conviction. *See id.*

■ The Court of Criminal Appeals' analysis is clearly based on an analogy to those cases which hold that double jeopardy protections were provided to prevent one sovereign from twice placing a person in jeopardy of life and limb, not merely to protect an individual from suffering two punishments for committing one act. *Williams,* 799 S.W.2d at 307. Any other interpretation of the double jeopardy clause would preclude two states, or the federal and a state government from imposing separate punishment for the same acts. In other words, the Fifth Amendment double jeopardy provisions has been construed to allow two convictions for the same offense as long as they are obtained by different "sovereigns." *See Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (different states obtaining separate convictions for same acts); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (federal government and a state obtaining separate convictions for same acts). The rationale for Heath and Abbate and other "different sovereign" cases is that crimes committed against different sovereigns are different offenses, even though their elements and the acts may be identical. *Williams,* 799 S.W.2d at 307 n. 8. They are not the "same offenses" for double jeopardy purposes. *Id.*

Relator argues that because the Texas Legislature passed the criminal non-support statute and passed the legislation that created the court in which relator was found in contempt, relator has not been convicted by "separate or different sovereigns" for double jeopardy purposes. In support of the argument, relator relies on language contained in *Williams* which states that different agents of the same sovereign are barred from obtaining separate convictions for the same offense even though the agents represent different political divisions of the sovereign. *Id.*

at 307. Relator's argument is clearly without merit based on the ultimate holding in *Williams.* In *Williams,* the Texas Legislature passed the attempted capital murder statute under which Williams was indicted, and passed the legislation which created the court in which Williams was ultimately found guilty of contempt. Yet, the Texas Court of Criminal Appeals still held that there was no double jeopardy violation because the contempt conviction had been initiated by a private party. Clearly, the court saw the contempt conviction as a purely private matter and simply not involving the sovereign in such a way as to violate the double jeopardy provisions of the United States and Texas Constitutions.[2] *See id.*

Further, there is nothing in *United States v. Dixon,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), that compels a different result. There is no indication in *Dixon* that the parties made the "private party versus state" argument upon which the holding in *Williams* is based. Certainly, nowhere in the opinion does the Supreme Court address such an argument. *Dixon,* therefore, does not preclude an analysis of a double jeopardy claim as set forth in *Williams.*

We hold that the contempt and commitment order are not void under the double jeopardy provisions of the United States and Texas Constitutions. Relator's first contention is overruled.

■ Relator next contends that the trial court erred by imposing criminal penalties on relator for acts not proven beyond a reasonable doubt. Relator's argument is based on the contention that the trial court used the incorrect standard of proof in assessing relator's guilt in the contempt proceeding. Relator argues, based on TEX.FAM.CODE ANN. § 11.15(a) (Vernon 1986), that because the trial court's commitment order is silent as to the evidentiary basis for its findings, it must be presumed that the trial court followed section 11.15 and reached its findings based

---

**2.** Though not specifically raised by relator, the fact that the an attorney from the Texas Attorney General's office acted as counsel for Denice Gre-

vious is of no moment. The attorney was not acting as an agent of the state; rather, the attor-

on a preponderance of the evidence.[3]

In *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429–30, 99 L.Ed.2d 721 (1988), the Supreme Court states that "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt. Thus, because criminal penalties were handed down in this case, relator was entitled to have his guilt proven beyond a reasonable doubt." *See id.* However, there is nothing in the record to suggest that the trial court used an improper standard. The contempt/commitment order does not state what standard was used by the court in coming to its decision. There is nothing in any of the documents filed in this court to suggest what standard the trial court used in making its decision to hold relator in contempt.

■ While relator is apparently correct that a "beyond a reasonable doubt" standard should be applied, there is no evidence that a lesser standard was applied. The trial court, sitting without a jury, is presumed to have used the correct standard of proof absent a showing to the contrary. *In re D.E.W.*, 654 S.W.2d 33, 36 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). The relator has the burden to show that the proper standard was not applied. *See id.* A judge in a bench trial is presumed to have applied the correct law to the facts. *Coonradt v. State*, 846 S.W.2d 874, 875 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd); *Bevill v. State*, 842 S.W.2d 837, 839 (Tex.App.—Beaumont 1992, no pet.); *Wallace v. State*, 770 S.W.2d 874, 876 (Tex. App.—Dallas 1989, pet. ref'd). Because relator has provided nothing to show that the trial court applied the incorrect standard, we presume the trial court applied the correct law.[4] Relator's second contention is overruled.

■ In his third contention, relator claims section 14.40(g) of the Texas Family Code is unconstitutional as applied in criminal contempt proceedings because it violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Section 14.40(g) states:

Inability to Pay. It is an affirmative defense to an allegation of contempt of court or of the violation of a condition of probation requiring payment of court-ordered support that the obligor lacked the ability to provide support in the amount ordered, lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed, attempted unsuccessfully to borrow the needed funds, and knew of no source from which the money could have been borrowed or otherwise legally obtained.

Tex.Fam.Code Ann. § 14.40(g) (Vernon Supp. 1995).[5]

Relator contends that *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721

ney was acting as an agent for a private individual. *See Williams*, 799 S.W.2d at 307 n. 11.

3. Section 11.15(a) states that except as provided in section 11.15(b), the court's findings shall be based on a preponderance of the evidence under rules generally applicable to civil cases. Tex.Fam. Code Ann. § 11.15(a) (Vernon 1986). Section 11.15(b) provides that court's use the clear and convincing evidence standard in findings necessary for termination of the parent-child relationship. Tex.Fam.Code Ann. § 11.15(b) (Vernon 1986). On April 20, 1995, the Texas Legislature recodified the Texas Family Code by reenacting Title 2 and adding Title 5. Act of April 20, 1995, ch. 20, § 1, 1995 Tex Sess.Law Serv. 113 (Vernon). This recodification was effective immediately. *Id.* at 282. A proceeding pending on the effective date of the Act is governed by the law in effect at the time the proceeding was commenced. *Id.* at 282. The present proceeding was commenced before April 20, 1995, and is,

therefore, subject to the Family Code provisions in effect before recodification.

4. In his reply brief, relator stated that he would file a transcript and a statement of facts, that would show that the trial court did not apply the correct standard of proof. However, no transcript or statement of facts was ever filed in this court.

5. On April 20, 1995, the Texas Legislature recodified the Texas Family Code by reenacting Title 2 and adding Title 5. Act of April 20, 1995, ch. 20, § 1, 1995 Tex Sess.Law Serv. 113 (Vernon). This recodification was effective immediately. *Id.* at 282. Under the recodification, section 14.40(g) now appears in chapter 157, section 157.008(c). *Id.* at 177–78. A proceeding pending on the effective date of the Act is governed by the law in effect at the time the proceeding was commenced. *Id.* at 282. The present proceeding was commenced before April 20, 1995, and

(1988), supports his position; however, actually *Hicks* demonstrates that his arguments are without merit. *See Ex parte Johns*, 807 S.W.2d 768, 772 (Tex.App.—Dallas 1991, orig. proceeding). In *Hicks*, a father sought a writ of habeas corpus after he was held in contempt for failure to comply with a child support order. 485 U.S. at 626–27, 108 S.Ct. at 1427. The father defended against the contempt charges by claiming that he was unable to make the required child support payments. *Id.* The trial court ruled that under a California statute, the father is presumed to remain able to comply with the support order, and held him in contempt.[6] *Id.* at 627, 108 S.Ct. at 1427. The California appellate court held that whether an individual is able to comply with a court order is an element of the offense rather than an affirmative defense. *Id.* at 629, 108 S.Ct. at 1428. Thus, the appellate court reasoned that the statute relied on by the trial court impermissibly shifted the burden of persuasion to the alleged contemnor, rather than simply the burden of production, in showing inability to comply. *Id.* The California appellate court held that this was a violation of due process. In other words, because ability to comply is an element of the offense in California, the statute unconstitutionally permitted a presumption in favor of an alleged contemnor's guilt, and thus, did not require all elements of the offense to be proved as required by due process. "Due process requires that an alleged criminal contemnor not shoulder the burden of persuasion to disprove an **element of the offense of contempt.**" *Ex parte Roosth*, 881 S.W.2d 300, 300 (Tex.1994) (citing *Hicks*, 485 U.S. at 632–33, 108 S.Ct. at 1430) (emphasis added).

The United States Supreme Court ruled that it was not at liberty to depart from the California's resolution of these issues because they were issues of state law. *Id.* Thus, the question of whether ability to comply with a court order, or, in other words, inability to pay, in the context of a contempt proceeding, is an element of the offense or an affirmative defense is a question of state law. In Texas, an obligor bears the burden of establishing the defense of inability to pay. *See Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967); *Ex parte Kollenborn*, 154 Tex. 223, 276 S.W.2d 251, 253 (1955). Existing case law was codified by the enactment of section 14.40(g) of the Texas Family Code. *Johns*, 807 S.W.2d at 772. Recently, the Texas Supreme Court specifically dealt with the issue of inability to pay and due process in *Roosth*. The court reiterated that in Texas, ability to comply is an affirmative defense. 881 S.W.2d at 301. Clearly, due process is not violated when an alleged contemnor has the burden of persuasion to prove an affirmative defense rather than an element of the offense. *See Hicks*, 485 U.S. at 632–33, 108 S.Ct. at 1430; *Roosth*, 881 S.W.2d at 300. Thus, section 14.40(g) does not create a constitutionally impermissible presumption, nor does it improperly shift the burden of persuasion. Inability to pay is an affirmative defense in this state; it is not an element of the offense. The burden of proof imposed by the trial court under section 14.40(g) is consistent with due process. *Roosth*, 881 S.W.2d at 301. The United States Supreme Court specifically ruled that the issue was to be left to the states; Texas has decided the issue against relator. Relator's third contention is overruled.

Having overruled all of relator's contentions, we decline to grant the writ of habeas corpus. Relator's writ of habeas corpus is denied, his bond is revoked, and he is remanded to the custody of the Harris County Sheriff.

is, therefore, subject to the Family Code provisions in effect before recodification. Further the Texas Legislature made no substantive changes when it recodified section 14.40(g). *See id.* at 177–78.

6. The statute in question was section 1209.5 of the California Code of Civil Procedure and stated that "[w]hen a court of competent jurisdiction makes an order compelling a parent to furnish support ... for his child, proof that ... the parent was present in court at the time the order was pronounced and proof of non-compliance therewith shall be prima facie evidence of a contempt of court." *Hicks v. Feiock*, 485 U.S. 624, 628 n. 1, 108 S.Ct. 1423, 1427 n. 1, 99 L.Ed.2d 721 (1988) (quoting California Civ.Proc. Code Ann. § 1209.5 (West 1982)).