**Affirmed and Memorandum Opinion filed July 18, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00751-CR

---

### ENZO UBADIMMA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1494343**

---

## MEMORANDUM OPINION

Appellant Enzo Ubadimma appeals his conviction for capital murder. After appellant waived his right to a jury trial, the trial court found him guilty under the law of parties. Punishment was assessed by law at imprisonment for life without the possibility of parole. In five issues on appeal, appellant contends that: (1) there was a material variance between the offense on which he was indicted and the offense for which he was convicted; (2) the judgment should be reformed to reflect a conviction for a conspiracy to commit murder as opposed to a conviction for

capital murder; (3) the trial court erred in considering the law of parties without providing notice and an opportunity to object; (4) the trial court intruded on appellant's presumption of innocence by trying him while he was in handcuffs; and (5) the evidence was insufficient to support appellant's conviction because there was no evidence he should have anticipated the shooting. Holding there is no reversible error in the judgment, we affirm.

## *Background*

The indictment alleged that appellant committed capital murder by shooting Herman Browning, Jr. with a firearm during the course of committing a robbery. Appellant waived his right to a jury trial, and a bench trial ensued. The record reflects that at the start of trial, defense counsel asked whether it was "necessary that [appellant]'s hands be shackled behind him." The record further reflects that appellant's hands were then shackled in front of him. Defense counsel thanked the bailiff for doing so.

During her opening statement, the prosecutor laid out what she expected the evidence to show and the State's theory of the case. She indicated that the State did not intend to show that appellant pulled the trigger but that appellant was an integral participant in a conspiracy to rob a restaurant that resulted in Browning being shot and killed by a coconspirator.

At trial, eyewitness testimony, supported in part by video evidence, established that two men, Irvyn Campos and Telavell Coleman, entered and robbed a restaurant where Browning was dining with his family. Both men were armed with pistols. During the course of the robbery, at least one of the men shot Browning, but Browning was able to rip the mask off one of the robbers. Browning subsequently died from his wounds. Campos and Coleman fled from the restaurant in a silver Chevrolet Cruze that had dropped them off before the robbery and was

2

waiting for them in front of the restaurant. Security video also established that the same vehicle had driven by the restaurant several times the day before the robbery and on the day of the robbery.

Two women testified as accomplice witnesses. Dadriana Holmes stated that she was dating appellant at the time of the robbery, and Tiala Alexander stated that she was dating Coleman at that time. Both women had pleaded guilty to aggravated robbery at the time of appellant's trial.

Holmes admitted that she was involved in the planning of the restaurant robbery along with appellant, Coleman, and Alexander. She and Alexander were tasked with scoping out the restaurant and seeing how many people were inside before the robbery. The four of them were riding around in a small silver car appellant had rented. Holmes stated that she thinks both appellant and Coleman had the idea to have the women scope out the restaurant. She and Alexander entered the restaurant, or at least opened the door, and asked to use the restroom but were told there was no restroom. Holmes and Alexander then went to a friend's house where Holmes fell asleep. After Alexander woke her, Holmes saw that the restaurant was on the news, so she called appellant. He answered but told her not to call his phone "with that shit." Appellant and Coleman later picked the women back up, and Coleman then revealed that both he and Campos had shot a man during the robbery. Holmes also mentioned that appellant had been shot at some point prior to the robbery and had a limp at the time of the robbery. Holmes lastly stated that they were all arrested together while riding around in a truck.

Alexander testified that at the time of the robbery, the four of them (appellant, Coleman, Holmes, and Alexander) were nearly inseparable. The four were staying in a hotel together, but on the day of the robbery, they checked out and were driving around in a little silver car appellant had rented. She and Holmes

3

went into the restaurant to scope it out so that appellant and Coleman could rob it. During a conversation between the four of them, Alexander was told what to do in the restaurant, including locating the cash register and counting the number of people in the restaurant. Alexander identified herself and Holmes in a video that captured them getting out of appellant's rental car in front of the restaurant. She said they did not make it past the threshold of the restaurant, but when she returned to the car, she was asked, "Is it green?" and she responded, "Yeah." Appellant, who Alexander said had a limp at that time from having been shot, started calling people looking for someone to join them for the robbery. Eventually, they got someone to participate who Alexander knew as "Lil Mexico," an apparent nickname for Campos. Appellant and Coleman dropped Alexander and Holmes at a friend's house and then headed back to the restaurant to rob it. Alexander later saw the restaurant on the news, and appellant and Coleman returned to pick her and Holmes up. Coleman then explained that there had been a "tussle" in the restaurant and both Lil Mexico and Coleman had shot the other man involved. The four of them were arrested several days later as they rode around in another vehicle obtained by appellant.

Police officers recounted the arrest of appellant, Coleman, Alexander, and Holmes. When the vehicle carrying the four was pulled over, it "slowed-rolled" for approximately 50 feet. An officer explained that this is usually an indication that someone in the vehicle is attempting to dispose of or hide evidence or that someone was about to run from the vehicle. When the vehicle fully stopped, appellant ran from the driver's door, but the officers were able to apprehend him after a brief chase. An inventory of the vehicle revealed items connected to the robbery, including a black ski mask like the one Coleman wore during the robbery and a revolver that was linked by investigators to the shooting.

4

Additional evidence also tied appellant to the robbery. On a few occasions, an officer observed appellant driving a silver Chevrolet Cruze after the robbery, and the vehicle was subsequently discovered in the garage at appellant's residence. Rental company records showed that appellant's father had rented a silver Chevrolet Cruze around that time, but communications recovered from a cell phone, which was otherwise established to likely be appellant's, showed that appellant was involved in renting the vehicle. Further communication retrieved from appellant's phone appeared to indicate that he was involved in planning a robbery or robberies prior to the robbery of the restaurant. Cell phone records additionally indicated that appellant searched for information regarding the restaurant robbery after it occurred.

During closing argument, the prosecutor reiterated that the State was prosecuting appellant under the law of parties and not as the actual shooter. She specifically explained that

> [t]he State of Texas is moving forward on this case under the theory of conspiracy liability. It is true we are not saying that he's the actual one who pulled the trigger, but instead an intent to carry out conspiracy to commit one felony, which is the aggravated robbery, another felony is committed, which is the capital murder, all conspirators are guilty of the felony actually committed, though having no intent to commit it, and it was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out that conspiracy.

At the conclusion of the trial, the court convicted appellant of capital murder and punishment was assessed as a matter of law at imprisonment for live without the possibility of parole. The court's judgment reflects these rulings.

### *Alleged Variance*

In his first two issues, appellant (1) alleges that there was a material variance

5

between the offense on which he was indicted and the offense for which he was convicted and (2) requests that the judgment be reformed to reflect a conviction for the offense for which he was convicted.[1] Specifically, appellant argues that while the indictment charged him with capital murder, he was actually convicted of a conspiracy to commit murder. He bases this assertion on the prosecutor's statement during closing argument that the State was "moving forward . . . under the theory of conspiracy liability."

Appellant, however, is misreading what occurred in the trial court. The prosecutor appears to be referencing an aspect of the law of parties, which is set out in Texas Penal Code section 7.02(b), as follows:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. In this subsection, "conspiracy" means an agreement between two or more persons to commit a felony.

Tex. Penal Code § 7.02(b).

There is no indication in the record that instead of referencing section 7.02(b), the prosecutor was instead attempting to change the offense for which appellant was being prosecuted to a conspiracy to commit capital murder, which entails different elements of proof. *See id*. § 15.02 (setting out elements for

---

[1] A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). A variance is material if it (1) deprived the defendant of sufficient notice of the charges against him such that he could not prepare an adequate defense, or (2) would subject the defendant to the risk of being prosecuted twice for the same offense. *Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002). The burden of demonstrating the materiality of a variance rests with the defendant. *Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).

criminal conspiracy offense). The prosecutor indicated both at the start and the conclusion of the trial that the State was seeking a conviction for capital murder through application of the law of parties. The evidence indicated appellant was an active participant in a conspiracy to commit a robbery that resulted in the murder of Browning. The trial court found appellant guilty of capital murder, the crime for which he was charged. Appellant has not demonstrated a material variance occurred in this case. *See Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001).[2] Accordingly, we overrule appellant's first two issues.

### *Notice and Opportunity*

In his third issue, appellant argues, as an alternative to his first two issues, that if the trial court indeed applied the law of parties, it erroneously failed to provide him with notice that it was doing so and an opportunity to object to it doing so. Appellant acknowledges, however, that he can find no legal authority requiring the trial court to raise the law of parties during trial and provide an opportunity for the parties to object to its application. Indeed, courts in bench trials are generally permitted to apply the law of parties whenever the facts support such application. *See, e.g.*, *Justice v. State*, 532 S.W.3d 862, 865 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (rejecting argument that law of parties was improperly applied because it was not pleaded in the indictment and the record was unclear as to whether the judge applied it to the predicate offense or to just the deadly weapon finding); *see also Jones, v. State*, No. 14-15-00612-CR, 2016 WL 6886832, at *3 (Tex. App.—Houston [14th Dist.] Nov. 22, 2016, no pet.) (mem. op., not designated for publication); *Nicholson v. State*, 162 S.W.3d 389, 397 n.6 (Tex.

---

[2] We further note that as it did here, the State need not specify in the indictment its intent to rely on the law of parties but may instead charge the defendant as the principal and then prove criminal responsibility at trial through the law of parties. *See, e.g.*, *Sierra v. State*, 501 S.W.3d 179, 184 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

App.—Beaumont 2005, pet. ref'd). Moreover, in a bench trial, we presume the trial court correctly applied the law. *Justice*, 532 S.W.3d at 865; *see also Ex parte Jackson*, 911 S.W.2d 230, 234 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding) (explaining that in a bench trial, the court is presumed to apply the correct law and the defendant has the burden to demonstrate that an improper standard was applied).

Moreover, as discussed in detail above, it was clear from the start of trial that the State's theory of the case rested on the law of parties. The prosecutor clearly indicated both during opening remarks and closing argument that appellant was not being prosecuted as the person who shot Browning but as a coconspirator in a conspiracy to commit a robbery that resulted in the murder of Browning. The evidence also indicated that if appellant was guilty, he was guilty as a party to the offense and not as the person who shot Browning. And based on his own closing argument, defense counsel clearly understood that appellant was being tried under the law of parties. Thus, even if appellant was entitled to notice and an opportunity to object, a holding we do not make, he had such notice and opportunity in this case.

Appellant additionally suggests that in addition to providing notice and an opportunity to object, the trial court should have specified on the record the substance of the law that it intended to apply. Appellant analogizes to the procedures governing submission of a jury charge in criminal trials, *see* Texas Code of Criminal Procedure article 36.14, but again acknowledges there is no similar authority requiring a trial court to state the substance of the law it is applying in a bench trial. Moreover, beyond asking a series of questions and suggesting that such a procedure is somehow required by the American adversarial system, appellant does not make a reasoned argument based on existing authority,

or for the extension of existing authority, in support of creating such a procedure. *See* Tex. R. App. P. 38.1(i). Appellant also did not preserve this issue by raising it in the trial court. *See id*. 33.1; *see also Garcia v. State*, 663 S.W.3d 92, 95 (Tex. Crim. App. 2022) (explaining that constitutional due process challenges can be forfeited by a failure to object in the trial court). For the foregoing reasons, we overrule the third issue.

### *Restraints*

In issue four, appellant contends that the trial court intruded on the presumption of innocence by trying him while he was in handcuffs. In support, appellant cites cases holding that it is generally impermissible for a defendant to appear for trial before a jury in visible restraints, due at least in part to the intrusion on the presumption of innocence. *See, e.g.*, *Bell v. State*, 415 S.W.3d 278, 281–83 (Tex. Crim. App. 2013). However, such restraints may be used before a jury under certain circumstances, provided the trial court has made a specific finding that such restraint is necessary in a particular case. *See id*. Appellant acknowledges that he has discovered no governing authority requiring the same procedures when a defendant is restrained during a bench trial. But even if the same procedures applied in a bench trial, any alleged error would need to be preserved in the trial court by a proper and timely request, objection, or motion. *See* Tex. R. App. P. 33.1; *see also Cedillos v. State*, 250 S.W.3d 145, 149–50 (Tex. App.—Eastland 2008, no pet.) (holding shackling issue was not preserved); *Wiseman v. State*, 223 S.W.3d 45, 49 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (same); *see also Williams v. State*, No. 14-07-00321-CR, 2008 WL 4146791, at *6 (Tex. App.—Houston [14th Dist.] Sept. 9, 2008, no pet.) (mem. op., not designated for publication) (same). *Cf. Richardson v. State*, 631 S.W.3d 269, 280 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (holding analogous complaint regarding

jurors seeing defendant being escorted by officer was waived). Appellant offers no reason why preservation would be required in restraint cases involving juries but would not be required in regards to a bench trial, and we can discern none.[3]

Here, at the start of trial, defense counsel asked whether it was "necessary that [appellant]'s hands be shackled behind him," and after appellant's hands were then restrained in front of him, defense counsel thanked the bailiff for doing so. In the absence of a timely request, objection, or motion that was unfulfilled, no alleged error was preserved for our review. *See* Tex. R. App. P. 33.1; *see also Caron v. State*, 162 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2005, no pet) (holding appellant failed to preserve any alleged error when he received all the relief he requested and no adverse ruling). Accordingly, we overrule the fourth issue.

### *Sufficiency of the Evidence*

Lastly, in issue five, appellant contends, essentially, that the evidence was insufficient to support his conviction because there was no evidence he should have anticipated the shooting. As the State points out in its brief, the reasoning behind appellant's fifth issue is a little difficult to decipher as appellant appears to conflate two arguments. Appellant states his fifth issue as "the evidence was legally insufficient to establish Appellant was guilty as a party to this offense because the 'accomplice-witness' rule did not establish Appellant should have anticipated the shooting." The accomplice witness rule requires that a conviction

---

[3] Appellant suggests without significant analysis that this issue should be treated as addressing a right (to trial free of restraints) that either cannot be waived or forfeited or must be implemented unless expressly waived, citing *Marin v. State*, 851 S.W.2d 275, 278–79 (Tex. Crim. App. 1993) (discussing different categories of rights). As the cited cases illustrate, however, courts treat complaints regarding restraints as requiring preservation by contemporaneous motion, request, or objection. *See Cedillos*, 250 S.W.3d at 149–50; *Wiseman*, 223 S.W.3d at 49; *Williams*, 2008 WL 4146791, at *6.

obtained based on accomplice testimony must be supported by sufficient corroborating evidence tending to connect the defendant to the offense committed. *See* Tex. Code Crim. Proc. art. 38.14; *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). The corroborating evidence need not, standing alone, rise to the level of proof beyond a reasonable doubt. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Instead, to comply with the rule, the evidence simply must link the defendant to the commission of the offense and show that rational jurors could conclude that the evidence sufficiently "tended to connect" the defendant to the offense. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). Accordingly, corroborative evidence need not be legally sufficient in itself to establish a defendant's guilt. *Casanova v. State*, 383 S.W.3d 530, 538 (Tex. Crim. App. 2012). In short, nothing about the accomplice witness rule requires evidence beyond the testimony of the accomplice witnesses establishing that appellant should have anticipated the shooting, as appellant appears to suggest.

Appellant's fifth issue, however, could also be interpreted as generally challenging the sufficiency of the evidence to support the conclusion that appellant should have anticipated that a murder would occur during the robbery. In assessing sufficiency of the evidence in a criminal case, we view all the evidence presented at trial in the light most favorable to the trial court's decision and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw

reasonable inferences from basic to ultimate facts. *Id*. This standard applies equally to circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

As discussed above, pursuant to the law of parties under Penal Code section 7.02(b), a conspirator may be found guilty of a felony committed by a co-conspirator in furtherance of the unlawful purpose of the conspiracy if the felony was one that should have been anticipated as a result of the carrying out of the conspiracy. Tex. Penal Code § 7.02(b). In reviewing a factfinder's determination on this point, we examine the totality of the circumstances to determine whether the particular offense committed by a co-conspirator was "reasonably foreseeable" within the scope of the unlawful agreement. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013); *Williams v. State*, 473 S.W.3d 319, 326 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

We begin our sufficiency analysis by noting that there was no direct evidence offered that appellant knew Coleman and Campos were going to possess or use firearms during the robbery. Circumstantial evidence, however, may be sufficient under appropriate circumstances to establish that an offense involving the use of a firearm was reasonably foreseeable as required under section 7.02(b). *See, e.g.*, *Williams*, 473 S.W.3d at 325–27; *Bergara v. State*, No. 14-07-00938-CR, 2009 WL 2476513, at *6 (Tex. App.—Houston [14th Dist.] Aug. 13, 2009, pet. ref'd) (mem. op., not designated for publication); *Hooper v. State*, 255 S.W.3d 262, 264–66 (Tex. App.—Waco 2008, pet. ref'd) (on remand); *Tippitt v. State*, 41 S.W.3d 316, 325 (Tex. App.—Fort Worth 2001, no pet.).

Here, there was considerable evidence from the accomplice witnesses that

appellant was deeply involved in the planning for the robbery, the recruitment of an additional participant, and the scoping out of the restaurant. There was also evidence tying appellant to the vehicle that was used as a getaway car, including that he was seen driving it both before and after the robbery, the vehicle was discovered in the garage at his residence after the robbery, and appellant was apparently involved with his father in the rental of the vehicle. This evidence, along with security videos, also supports the conclusion that appellant acted as the getaway driver for the robbery. The videos show someone in light colored clothing driving shortly before two men identified as Coleman and Campos exited wearing dark colored clothing and headed toward the restaurant. The vehicle stopped at an exit from the parking lot rather than in a parking space. After robbing the restaurant, Coleman and Campos ran to the car and got back in the vehicle, which promptly pulled out into the street. Eyewitness testimony and security video also revealed that Coleman and Campos brandished guns in the restaurant and both fired at Browning. The evidence indicating appellant helped plan the robbery, recruited another participant, and was the getaway driver also supports the conclusion that appellant knew that firearms were being used in the robbery. *See Williams*, 473 S.W.3d at 325–27; *Bergara*, 2009 WL 2476513, at *6; *Hooper*, 255 S.W.3d at 264–66; *Tippitt*, 41 S.W.3d at 325. Additionally, when appellant was subsequently arrested, the gun used to shoot Browning was found in the vehicle he had been driving. This evidence was sufficient to support the conclusion that it was reasonably foreseeable to appellant that a murder might occur during the course of the armed robbery of the restaurant.

Appellant asserts that the two accomplice witnesses, Alexander and Holmes, expressed surprise that someone had been shot during the course of the robbery and their surprise at that fact suggests appellant also would not have foreseen the

shooting. However, the record citation appellant offers in support of this assertion is just to where Alexander discussed seeing a report on the news that someone had been hurt at the restaurant. The fact Alexander apparently did not know someone had been shot until she saw the news report does not mean the shooting was not reasonably foreseeable to appellant. Appellant does not make any other specific arguments regarding the sufficiency of the evidence. We overrule appellant's fifth issue.

### *Conclusion*

Having overruled each of appellant's issues, we affirm the trial court's judgment.


/s/ Frances Bourliot
   Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).