**Ex parte David Eugene RHODES, Appellee.**

**No. 357–97.**

Court of Criminal Appeals of Texas, En Banc.

July 1, 1998.

William W. Burge, Houston, for appellant.

William J. Delmore, III, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, Judge, delivered the opinion of the Court in which BAIRD, OVERSTREET, MEYERS, HOLLAND and WOMACK, Judges, join.

David Eugene Rhodes, appellee, was indicted for the offense of interference with child custody. Prior to trial, he filed an application for a writ of habeas corpus contending that the Double Jeopardy Clause of the United States Constitution barred his prosecution for this offense because of his previous criminal contempt conviction based on the same conduct. The trial court granted relief. On appeal by the State, a panel of the Fourteenth Court of Appeals reversed the trial court's decision and held that appellee's prosecution was not jeopardy barred. *Ex parte Rhodes*, 938 S.W.2d 192 (Tex. App.—Houston [14th Dist.] 1997, pet. granted).[1] We granted appellee's petition for discretionary review to determine if the Double Jeopardy Clause prohibits a criminal prosecution following a criminal contempt conviction for the same conduct.[2] We will reverse.

### I. Factual Background

Upon appellee's divorce from his wife, the trial court entered a decree ordering that their child reside in Harris County, Texas, and enjoining either party from changing the child's county of residence without prior court approval. On August 30, 1994, appellee, in violation of the order, removed his child to Malaysia and then Singapore. The child remained abroad until July 20, 1995. Shortly after appellee returned to the United States, he was arrested and charged with the offense of interference with child custody. *See* TEX. PENAL CODE ANN. § 25.03 (Vernon 1994).[3] Several months before appellee's arrest, his former wife had instituted proceed-

---

1. The court of appeals styled this case *State v. Rhodes*. Because it is an appeal from a habeas corpus proceeding, it should be styled *Ex parte Rhodes*.

2. Appellee's sole ground for review is: "The court of appeals erred in holding that reversible error was committed by the trial court with its holding that a criminal contempt conviction

served as a bar to subsequent criminal prosecution."

3. The record does not reflect the specific indictment with which appellee was charged. We assume, for purposes of this appeal, that he was charged under TEX PEN.CODE ANN. § 25.03(a)(1) (Vernon 1994).

ings to have appellee found in contempt of court for violating the custody order.

On October 17, 1995, the trial court held a hearing on the motion for enforcement filed by appellee's ex-wife and found appellee in contempt of court for violating the order's provisions. The judge assessed punishment at payment of a $100 fine and $2500 in legal fees to compensate his ex-wife's attorney. The court also required appellee to post a $2500 bond to ensure future compliance with the custody order.[4]

Appellee filed an application for a pre-trial writ of habeas corpus in the 183rd District Court, where his criminal charges were pending, contending that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred his prosecution for interference with child custody due to his prior contempt conviction. After an evidentiary hearing, the trial court granted habeas corpus relief and the State appealed. *See* TEX.CRIM. PROC.CODE ANN. § 44.01(a)(4) (Vernon Supp.1997).

## II. Decision of the Court of Appeals

Relying on this Court's holding in *Ex parte Williams*, 799 S.W.2d 304 (Tex.Crim.App. 1990), the Fourteenth Court of Appeals reversed the trial court's decision to grant relief on the writ of habeas corpus. The court of appeals explained that in *Williams* we declined to find that a criminal contempt action, initiated by a private party, prohibited a subsequent criminal prosecution based on the same conduct. *Rhodes*, 938 S.W.2d at 194. The court discerned no basis to distinguish appellee's claim from that of Williams and found that the United States Supreme Court decision in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), which was issued after *Williams*, did not dictate a different result. As noted by the court of appeals, *Dixon* concluded that, in some instances, a finding of criminal contempt bars a subsequent criminal prosecution involving the same conduct. *Rhodes*, 938 S.W.2d at 194. The court pointed out, however, that *Dixon* did not directly address

"the 'private party versus state' distinction ... [and] that nothing in *Dixon* was inconsistent with the 'multiple sovereignty' analysis used in *Williams*. ..." *Id.* Thus, they held, in light of *Williams*, that it was error for the trial court to grant the writ of habeas corpus. *Id.* at 195.

## III. Arguments of the Parties

Appellee contends that the court of appeals erred in relying on *Williams*. Instead, he advocates that the Supreme Court's holding in *Dixon* controls the outcome of his case. He reasons that when the Supreme Court rejected—in a footnote—the prosecution's "multiple sovereignty" analysis, this implicitly overruled *Williams* since this Court employed a similar rationale to sanction the holding in *Williams*. Pursuant to *Dixon*, appellee concludes that his prosecution for interference with child custody is jeopardy barred.

The State counters by arguing that litigation between private parties does not invoke the protections of the Double Jeopardy Clause. Because the contempt proceedings in this case were initiated and litigated solely by appellee's ex-wife, as part of her civil case, the State characterizes the contempt proceeding like a civil action for punitive damages and unlike a criminal prosecution. Alternatively, the State suggests that appellee's two prosecutions do not constitute the "same offense" under Double Jeopardy jurisprudence. Employing a rationale similar to that advanced in its first argument, the State contends that a contempt action arises from violation of a court order entered for the benefit of a private party, whereas a criminal prosecution is brought by the State to protect its citizens. As a result, the contempt proceeding "is different in virtually every respect from the sort of 'offense' defined by the Penal Code and prosecuted by the State in a criminal court." Brief for State at 6. The State, in its final point, urges this Court to follow *Williams* and to distinguish *Dixon* on its facts.

---

4. The record does not reflect the specific statutory contempt provision under which the defendant was convicted. We assume, for purposes of

this appeal, that he was convicted under TEX. GOV'T CODE ANN. § 21.002 (Vernon 1988 & Supp. 1998).

## IV.  Analysis

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.[5] The protection afforded by this Clause applies to: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *See Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 769 n. 1, 114 S.Ct. 1937, 1941 n. 1, 128 L.Ed.2d 767 (1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). This case concerns the second of these protections. Before delving further into this case, we must consider the recent decision of the U.S. Supreme Court.

### A.  *United States v. Dixon*

In a recent plurality opinion, the United States Supreme Court addressed the issue of whether or not the protection of the Double Jeopardy Clause attaches in indirect (non-summary) criminal contempt prosecutions.[6] *Dixon*, 509 U.S. at 696, 113 S.Ct. at 2856. The Court reiterated that criminal contempt is "a crime in the ordinary sense," and, thus, warrants the same constitutional safeguards as other criminal prosecutions. *Id.* at 695–697, 113 S.Ct. at 2855–2856 (quoting *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481–1482, 20 L.Ed.2d 522 (1968)).

In the first of two consolidated cases,[7] Dixon had been arrested on charges of second degree murder and later released on bond with the condition that he not violate any law. While awaiting trial, Dixon was arrested for possession of cocaine with intent to distribute and the district court issued a show cause order requiring Dixon to explain why he should not be held in contempt of court. *Id.* at 691, 113 S.Ct. at 2853. At the hearing, the judge found that Dixon had committed the offense, found him in criminal contempt, and sentenced him to 180 days in jail. *Id.* at 692, 113 S.Ct. at 2853.

Foster, the defendant in the second case, was found guilty on four counts of criminal contempt for physically assaulting his wife and otherwise violating two civil protective orders. He was subsequently indicted for assault, assault with intent to kill and three counts of threatening to injure another, all based on the events at issue in the contempt proceeding. *Id.* at 692–693, 113 S.Ct. at 2853–2854. On appeal, the appellate court held that further prosecution of both Foster and Dixon violated the Double Jeopardy Clause. *Id.* at 693–694, 113 S.Ct. at 2854.

In *Dixon*, a majority of the members of the Court appeared to indicate that *Blockburger*[8] is the primary test to use when reviewing a double jeopardy claim, but they could not agree on how the test applied in this instance.[9] *Id.* at 696–697, 113 S.Ct. at

---

5. This provision applies to the states by incorporation through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 795–96, 89 S.Ct. 2056, 2062–2063, 23 L.Ed.2d 707 (1969).

6. Indirect or nonsummary contempt is contemptuous conduct committed outside the court's presence. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798–99, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). Direct or summary contempt, in contrast, is contemptuous conduct which occurs in open court in the judge's presence. *Id.*

7. The District of Columbia Court of Appeals consolidated the two cases since they raised similar double jeopardy issues.

8. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

9. Under Justice Scalia's *Blockburger* analysis, which was joined by Justice Kennedy, the count

against Dixon and one of the counts against Foster were barred by Double Jeopardy. *Dixon*, 509 U.S. at 697–703, 113 S.Ct. at 2856–2859 (opinion of Scalia, J.). Under Chief Justice Rehnquist's *Blockburger* analysis, which was joined by Justice O'Connor and Thomas, none of the counts against either Dixon or Foster were barred by Double Jeopardy. *Id.* at 713–720, 113 S.Ct. at 2865–2868 (opinion of Rehnquist C.J.). Justice White, joined by Justice Stevens, appeared to endorse some application of the *Blockburger* test, but specifically disagreed with Justice Scalia's application of it. *Id.* at 741, 113 S.Ct. at 2879 (opinion of White, J.). Justice Souter, joined by Justice Stevens, emphasized that *Blockburger* was not the exclusive test by which to determine whether the rule against successive prosecutions applied. *Id.* at 754–755, 113 S.Ct. at 2886–2887 (opinion of Souter, J.). Justice Blackmun, although coming to a different conclusion than Justice Souter in the cases before the Court, stated that he agreed with Justice Souter that *Blockburger* was not the exclusive

2856. Writing for a splintered Court, Justice Scalia, joined by four others, concluded that Dixon's subsequent prosecution and Foster's prosecution for assault were jeopardy barred.[10] As well, a majority of justices agreed to overrule the three-year old "same conduct" test—under which the critical inquiry to establish a jeopardy bar is the scope of the conduct the government will prove, not the evidence it will use to prove the conduct—that had been adopted in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Dixon*, 509 U.S. at 704–712, 113 S.Ct. at 2860–2864.

■ The fractured nature of *Dixon* provides little guidance for courts to follow. However, it is still Supreme Court precedent and thus we are bound to follow it as best we can.[11] Therefore, our analysis will be a pragmatic one: we will analyze each separate opinion in *Dixon* and apply the legal reasoning of each opinion to the facts before us to determine whether or not each justice in *Dixon* would find that appellee's subsequent

prosecution is barred by double jeopardy; we will then tally the "votes" as determined from *Dixon* to determine whether a majority of members from that decision would find that appellee's subsequent prosecution is barred by double jeopardy.[12] In doing so, we believe that we will be replicating what is the essential "holding" of *Dixon*. *See Nichols v. United States*, 511 U.S. 738, 745–746, 114 S.Ct. 1921, 1926–1927, 128 L.Ed.2d 745 (1994); *Marks v. United States*, 430 U.S. 188, 193–194, 97 S.Ct. 990, 993–994, 51 L.Ed.2d 260 (1977); *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976).

## B.   Application of *Dixon*

■ First, we briefly address the opinion of the Court of Appeals. It held that *Dixon* did not control, since in the present case, the contempt prosecution was brought by a private party (appellee's ex-wife), and the "majority opinion" in *Dixon* had no discussion of the "private party versus state"

test by which to determine whether the rule against successive prosecutions applied. *Id.* at 741, 113 S.Ct. at 2880 (opinion of Blackmun, J.).

**10.** There is no actual *holding* of the court, but only a *judgment*, as to this. Justice Scalia, joined by Justice Kennedy, stated that he believed that Dixon's subsequent prosecution and Count I of Dixon's subsequent prosecution were barred by Double Jeopardy, but that Counts II–IV of Dixon's subsequent prosecution were not barred by Double Jeopardy. *Dixon*, 509 U.S. at 712, 113 S.Ct. at 2864 (opinion of Scalia, J.). Chief Justice Rehnquist, joined by Justices O'Connor and Thomas, joined Parts I, II and IV of Justice Scalia's opinion and stated that, in his opinion, Double Jeopardy was not violated by any of the substantive criminal prosecutions. *Id.* at 713–714 & 719–720, 113 S.Ct. at 2865 & 2868. Justice White, joined by Justice Stevens, stated that he concurred only in the judgment of Part III–A of Justice Scalia's opinion, believing that Dixon's subsequent prosecution and Count I of Foster's subsequent prosecution were barred. *Id.* at 740, 113 S.Ct. at 2879 (opinion of White, J.). Justice Blackmun stated that he believed that none of the subsequent prosecutions of either Dixon or Foster was barred. *Id.* at 743, 113 S.Ct. at 2881 (opinion of Blackmun, J.). Justice Souter, joined by Justice Stevens, stated that he concurred with the judgment that both Dixon's subsequent prosecution and Count I of Foster's subsequent prosecution were barred, but that he dissented from the judgment that Counts II–IV of Foster's subsequent prosecution were not barred. *Id.* at 763,

113 S.Ct. at 2891. Thus, the final tally reveals that a majority of the members of the court (five—Scalia, Kennedy, White, Stevens, Souter) believed Dixon's subsequent prosecution and count I of Foster's subsequent prosecution were barred, and that a majority (six—Scalia, Kennedy, Rehnquist, O'Connor, Thomas, Blackmun) believed that counts II–IV of Foster's subsequent prosecution were not barred.

**11.** Even in the face of a fragmented precedent, we do not feel at liberty, as some courts do, to ignore that precedent and instead base our opinion on what we *believe* the current Court *might* do. *See, e.g., Hopwood v. Texas*, 78 F.3d 932, 941–945 (5th Cir.1996) (ignoring precedent of *Regents of University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) and concluding that current Supreme Court would find that diversity is not a compelling justification for state university law school's affirmative action admissions program), *cert. denied*, 518 U.S. 1033, 116 S.Ct. 2581, 135 L.Ed.2d 1095 (1996).

**12.** At first glance, this analysis may seem rather odd, since two of the justices whose votes were crucial in *Dixon*, White & Blackmun, have since retired from the Court. However, this is no different than when we rely on a precedent by a court whose members at the time of that decision are long gone; here, we are merely basing our decision on the opinions of individual justices in a particular case, rather than on the opinion of "the court."

distinction. *Rhodes*, 938 S.W.2d at 194. In *Dixon*, the prosecution for contempt of court was brought against Foster by a private party, his estranged wife. *Dixon*, 509 U.S. at 692–693, 113 S.Ct. at 2853–2854. A majority of the Court held that one count of Foster's subsequent prosecution was jeopardy barred. *Id.* at 712, 113 S.Ct. at 2864 (opinion of Scalia, J., joined by Kennedy, J.); *id.* at 741, 113 S.Ct. at 2879 (opinion of White, J., joined by Stevens, J.); *id.* at 763, 113 S.Ct. at 2891 (opinion of Souter, J., joined by Stevens, J.). Thus, although there is no specific discussion of the "private party versus state" distinction by a majority of the members of the Court in *Dixon*, the inevitable conclusion, based on the outcome of that case, is that such a distinction is irrelevant for purposes of Double Jeopardy analysis. This seems particularly clear, given that Foster was found *guilty beyond a reasonable doubt* on various counts of *criminal contempt. Id.* at 693, 113 S.Ct. at 2854 (opinion of Scalia, J., joined by Kennedy, J.). Also, this issue was certainly considered by the Supreme Court, since, as Justice Scalia pointed out, "the United States was not represented at trial, although the United States Attorney was apparently aware of the action ..." *Id.* at 692, 113 S.Ct. at 2854 (opinion of Scalia, J., joined by Kennedy, J.). Therefore, we hold that the Court of Appeals erred and that *Dixon* applies to the present case. We now analyze appellee's prosecutions under *Dixon*, rather than remanding the cause back to the Court of Appeals, so as to give guidance to our lower courts when faced with attempting to apply the U.S. Supreme Court's fragmented and rather confusing decision.

Under Justice Scalia's *Blockburger* analysis, which was joined by Justice Kennedy, the count against Dixon and one of the counts against Foster were barred by Double Jeopardy. *Dixon*, 509 U.S. at 697–703, 113 S.Ct. at 2856–2859 (opinion of Scalia, J.). Justice Scalia's approach was to do a *Blockburger* analysis, comparing the terms of the court order underlying the contempt charge with the elements of the substantive criminal statute underlying the subsequent criminal prosecution. *Id.* at 697–703, 113 S.Ct. at 2856–2859 (opinion of Scalia, J.).[13]

■ Recently, the Texas Supreme Court held that the elements that must be proved in a constructive criminal contempt conviction are the following: (1) a reasonably specific order; (2) a violation of the order; (3) the willful intent to violate the order. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995). As appellee's conviction for criminal contempt arose from a civil proceeding, it is still considered a "civil," rather than a "criminal," case. *Harbison v. McMurray*, 138 Tex. 192, 158 S.W.2d 284, 288 (1942). Therefore, we are bound by Texas Supreme Court precedent on this matter, and will apply these elements to analyze appellee's Double Jeopardy claim.[14]

**13.** It should be pointed out that, having set out his approach to analyzing the problem, Justice Scalia went on to apparently misapply his own legal reasoning in at least one instance. Specifically, in Foster's case, three of his counts were brought under a criminal statute prohibiting threats "... to kidnap any person or to injure the person of another or physically damage the property of any person." *Dixon*, 509 U.S. at 702, 113 S.Ct. at 2859. The contempt prosecution was based on the court order that he not "in any manner threaten" his estranged wife. *Id.* Conviction of contempt required willful violation of the court order. *Id.* Thus, under a *Blockburger* analysis, since threatening in any manner would clearly include threatening to kidnap, injure or physically damage property, then the criminal statute would be a "lesser included offense" of the court order. That is, all of the elements of the criminal statute are included in the court order. Therefore, conviction for contempt pursuant to the court order would, according to Justice Scalia's approach, preclude a subsequent conviction under the criminal statute. Yet, Justice Scalia simply asserts:

> "Conviction of the contempt required violation of the [court order]—which conviction under [the criminal statute] did not; and *conviction under [the criminal statute] required that the threat be a threat to kidnap, inflict bodily injury, or to damage physical property—which conviction of the contempt (for violating the [court order] provision that Foster not 'in any manner threaten') did not.* Each offense therefore contained a separate element, and the *Blockburger* test for double jeopardy was not met." *Id.* at 702–703, 113 S.Ct. at 2859 (emphasis added and footnote omitted).

**14.** Whether a criminal contempt proceeding arising out of a civil proceeding is a criminal or civil case is an important issue, since it is dispositive as to whether this Court or the Texas Supreme Court has jurisdiction over such a contempt case. *See* TEX. CONST. art. V, §§ 3 & 5; TEX. GOV'T CODE

"Willfulness" is not a culpable mental state recognized under our penal code. *See* Tex. Pen.Code Ann. § 6.02 (Vernon 1994) (classifying culpable mental states as "intentional," "knowing," "reckless" and "criminal negligence"). However, the Texas Supreme Court has stated that "... one must have knowledge or notice of an order which one is charged with violating before a judgment of contempt will obtain." *Chambers*, 898 S.W.2d at 261. Therefore, we analyze the final element of proof of the contempt conviction as having a culpable mental state of "knowing."

In the present case, appellee was found in contempt of a decree ordering that his child reside in Harris County and enjoining either he or his ex-wife from changing the child's county of residence without prior approval. Thus, the elements of appellee's contempt conviction are changing the child's county of residence without prior approval of the court and doing so knowing that this was a violation of the court order. Under the relevant provision of TEX. PENAL CODE § 25.03, the elements of the offense of "Interference With Child Custody" are (1) taking or retaining a child younger than 18 years; (2) when the defendant knows that his taking or retention violates the express terms of a judgment or order of a court disposing of the child's custody.

Comparing the two provisions, under Justice Scalia's analysis, the court order would be a "lesser included offense" of the penal code provision. That is, the requisite culpable mental states are the same, and if one changes a child's county of residence, one always takes or retains the child, but one can take or retain a child without changing the child's county of residence. Therefore, we find that under Justice Scalia's approach, appellee's subsequent prosecution for Interference with Child Custody would be jeopardy barred, since appellee was already prosecuted for the "lesser included offense" of

criminal contempt. *Illinois v. Vitale*, 447 U.S. 410, 421, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980); *Brown v. Ohio*, 432 U.S. 161, 169–170, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 150–151, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977).

The other opinions in *Dixon* were far less intricate in their analysis than Justice Scalia's, and instead focused primarily upon various policies. Under Chief Justice Rehnquist's *Blockburger* analysis, which was joined by Justices O'Connor and Thomas, none of the counts against either Dixon or Foster were barred by Double Jeopardy. *Id.* at 713–720, 113 S.Ct. at 2865–2868 (opinion of Rehnquist C.J.). Rehnquist also believed that *Blockburger* should apply, but that the focus should be "... not on the terms of the particular court orders involved, but on the elements of contempt of court in the ordinary sense ... Because the generic crime of contempt of court has different elements than the substantive criminal charges in this case, I believe that they are separate offenses under *Blockburger*." *Id.* at 714, 113 S.Ct. at 2865 (opinion of Rehnquist, C.J.). Clearly then, under Rehnquist's approach, appellee's subsequent prosecution for Interference with Child Custody would not be jeopardy barred.

Justice White, joined by Justice Stevens and in part by Justice Souter, rejected Justice Scalia's application of *Blockburger*, referring to it as "... an overly technical interpretation of the Constitution." *Id.* at 720, 113 S.Ct. at 2869 (opinion of White, J.). Instead, White's focus was on the "... central purpose of the Double Jeopardy Clause ... to protect against vexatious multiple prosecutions ..." *Id.* at 735, 113 S.Ct. at 2876 (opinion of White, J.). Therefore, it is fairly clear that under Justice White's approach, appellee's subsequent prosecution for Interference with Child Custody would be jeopardy barred.

ANN. § 22.001 (Vernon 1988); TEX.CODE CRIM. PROC. ANN. art. 4.04 (Vernon Supp.1998). *Dixon* itself may well call into question *Harbison*, which was decided in 1942. That is, in *Dixon*, a majority of the United States Supreme Court noted that it was "well established that criminal contempt, at least the sort enforced through non-

summary proceedings, is 'a crime in the ordinary sense.'" *Dixon*, 509 U.S. at 696, 113 S.Ct. at 2856 (opinion of Scalia, J., joined by Rehnquist, C.J., and O'Connor, Kennedy and Thomas, JJ.) (citations omitted). Nevertheless, this issue is not now directly before us, and we therefore decline to address it.

Justice Blackmun, reasoning in a manner similar to Chief Justice Rehnquist, noted that the cases before the Court dealt not with successive prosecutions under the substantive criminal law, but with contempt of court, which he termed "a special situation." *Id.* at 741–742, 113 S.Ct. at 2880 (opinion of Blackmun, J.). Focusing on the purpose of contempt, "... not to punish an offense against the community at large but rather to punish the specific offense of disobeying a court order," he believed that none of the subsequent prosecutions against either Dixon or Foster were barred by Double Jeopardy. Therefore, we conclude that Justice Blackmun would clearly find that appellee's subsequent prosecution for Interference with Child Custody would not be jeopardy barred.

Finally, Justice Souter, joined by Justice Stevens, emphasized that *Blockburger* was not the exclusive test by which to determine whether the rule against successive prosecutions applied. *Id.,* at 754–755, 113 S.Ct. at 2886–2887 (opinion of Souter, J.). Instead, he focused on several other precedents, including *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which was overruled by a majority of the Court in *Dixon. Dixon, Id.* at 749–761, 113 S.Ct. at 2884–2890 (opinion of Souter, J.). That is, in each case before the Court, it was the *same conduct* that was the subject of both the contempt proceedings and the subsequent prosecutions, and thus all of the subsequent prosecutions were barred. *Id.* at 763, 113 S.Ct. at 2891 (opinion of Souter, J.). Thus, under Justice Souter's analysis, appellee's subsequent prosecution for Interference with Child Custody would clearly be barred.

## Conclusion

To summarize then, an analysis of the various opinions in *Dixon,* as applied to the

facts of the case before us, reveals the following Supreme Court "votes:"

(1) Scalia and Kennedy—Barred by Double Jeopardy Clause—2 votes;

(2) Rehnquist, O'Connor and Thomas—Not barred by Double Jeopardy Clause—3 votes;

(3) White and Stevens—Barred by Double Jeopardy Clause—2 votes;

(4) Blackmun—Not barred by Double Jeopardy Clause—1 vote;

(5) Souter (and Stevens)—Barred by Double Jeopardy—1 vote.

TOTAL: Barred by Double Jeopardy Clause—5 votes; Not Barred by Double Jeopardy Clause—4 votes.

The final tally shows that under *Dixon,* since appellee has already been prosecuted for contempt of court, his subsequent prosecution is barred by the Double Jeopardy Clause of the U.S. Constitution. Therefore, we reverse the judgment of the Court of Appeals and reinstate the trial court's grant of the writ of habeas corpus.

KELLER, J., concurs with opinion.

McCORMICK, P.J., dissents with an opinion which MANSFIELD, J., joins.

KELLER, Judge, concurring.

Although I am uncertain that appellee would prevail under the analysis in Justice Scalia's opinion in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), I nevertheless concur in the judgment because I believe that appellee prevails under Chief Justice Rehnquist's analysis, and I believe that the Chief Justice's double jeopardy approach is the correct one.[1]

1. Due to my analysis of Chief Justice Rehnquist's opinion and my agreement with the result reached in the present case, I need not explain why I believe Justice Scalia's opinion might lead to a contrary conclusion. Judge McCormick's argument for ignoring the fractured Supreme Court opinion in *Dixon* and following Texas precedent is appealing. However, *Dixon* is, at least arguably, binding precedent. A majority of the Court subscribed to the Chief Justice's interpretation of the *Blockburger* test, at least as the minimum protection for double jeopardy purposes. *See Dixon,* 113 S.Ct. at 2887, 125

L.Ed.2d at 606 (opinion of Souter, J.)(distinguishing test formulated in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) from a true *Blockburger* analysis); *see also Dixon,* 113 S.Ct. at 2856–2857, 125 L.Ed.2d at 569 (opinion of Scalia, J.)(*Harris* is the basis of Justice Scalia's "Blockburger" analysis).

I also note that the private party distinction announced by the Court of Appeals was at least implicitly rejected by the Chief Justice when he joined part I of Justice Scalia's opinion in *Dixon. See* 113 S.Ct. at 2865, 125 L.Ed.2d at 579 (opin-

Criminal contempt has the following elements: (1) violation of a court order, (2) court order is reasonably specific, and (3) a "willful" mental state. *Ex Parte Chambers,* 898 S.W.2d 257, 259 (Tex.1995). A "willful" mental state is essentially the equivalent of recklessness. *See United States v. Burstyn,* 878 F.2d 1322, 1324 (11th Cir.1989)(willfulness means "behavior amounting to a reckless disregard for the administration of justice"); *Chambers,* 898 S.W.2d at 259 (citing *Burstyn* ). Interference with child custody, as relevant here, contains the following elements: (1) taking or retaining a child younger than 18 years, (2) violation of a court order, (3) the violation is of the express terms of the order, (4) the court order disposes of the child's custody, and (5) a "knowing" mental state.[2] Texas Penal Code § 25.03(a)(1). The requirement that the violation of an order be of its "express terms" encompasses the requirement that the order itself be reasonably specific. *See Cabrera v. State,* 647 S.W.2d 654, 655 (Tex.Crim.App. 1983) (order must be specific enough to give notice that defendant's action is a violation of the law). And, a reasonably specific order requirement is necessary to satisfy the dictates of due process. *See Ex Parte Swate,* 874 S.W.2d 831, 833 (Tex.App.—Houston [14th Dist.] 1994).

According to Chief Justice Rehnquist, "*Blockburger*'s[3] same–elements test requires us to focus not on the terms of the particular court orders involved, but on the elements of contempt of court in the ordinary sense." *Dixon,* 113 S.Ct. at 2865, 125 L.Ed.2d at 579 (opinion of Rehnquist, C.J.). He characterized contempt as having two elements: (1) a court order made known to the defendant, and (2) willful violation of that order. *Id.* at 2865–2866, 125 L.Ed.2d at 580. In *Dixon,* the Chief Justice explained that the elements of contempt, under his formulation, had nothing to do with the elements of the substantive crimes of assault and drug distribution. *Id.* at 2866–2867, 125 L.Ed.2d at 581. Hence, the substantive offenses and the contempt offense were not the "same" under his interpretation of the *Blockburger* test. The Chief Justice cautioned that a jeopardy bar should be applied only to offenses that can be "analogized to greater and lesser included offenses." *Dixon,* 113 S.Ct. at 2867–2868, 125 L.Ed.2d at 582.

But, under Rehnquist's analysis, the contempt offense in the present case is a lesser included offense of the crime of interference with child custody. I have already set forth the elements of contempt in the abstract as the Chief Justice proposes. All of those elements are included in the proof required for the Penal Code offense of interference with child custody. That is, to prove interference with child custody, one must show that (1) a court order is violated, (2) the court order is reasonably specific, (3) a "knowing" mental state, which is a greater mental state than willfulness, and (4) additional elements (rendering interference with child custody the greater offense). What makes this case different from *Dixon,* under .Rehnquist's opinion, is that the "substantive crime" in the present case is in essence a "contempt plus" crime. *By its very terms,* § 25.03 is concerned with the culpable violation of court orders. Hence, while Rehnquist's analysis would have saved the substantive crimes from a jeopardy bar in *Dixon,* that analysis can provide no comfort to the State in the present case.

I concur in the Court's judgment.

---

ion of Rehnquist, C.J.). Part I of Justice Scalia's opinion held that criminal contempt is "a crime in the ordinary sense" and that "the protection of the Double Jeopardy Clause attaches." 113 S.Ct. at 2855–2856, 125 L.Ed.2d at 567–568.

Finally, without expressing any opinion concerning the advisability of the lead opinion's "tallying" approach to deciding cases under *Dixon,* I do note that my analysis of the Chief Justice's view of *Blockburger* shows that appellee would prevail under that approach, even absent support from Scalia's opinion in *Dixon.* Chief Justice Rehnquist's opinion received three votes (himself and Justices O'Connor and Thomas). Adding

those three votes to the votes that would be produced from the opinions authored by Justices White and Souter (joined by Justice Stevens) yields a majority vote of six in appellee's favor.

**2.** *The statute provides:*

(a) A person commits an offense if he takes or retains a child younger than 18 years when he:
(1) knows that his taking or retention violates the express terms of a judgment or order of a court disposing of the child's custody.

**3.** *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

McCORMICK, Presiding Judge, dissenting.

Applicant violated a trial court's custody order in a civil divorce case by taking his and his ex-wife's child out of the country. Upon request by applicant's ex-wife the trial court in the civil proceeding found applicant in contempt for violating the court's order. See generally Chapter 157, Texas Family Code. The trial court in the civil proceeding ordered applicant to pay a $100 fine, to compensate his ex-wife for her legal fees and to post a $2500 bond to ensure future compliance with the court's order. The State of Texas now desires to prosecute applicant in a criminal proceeding for the criminal offense of interference with child custody which carries stiffer penalties than the $100 fine applicant was assessed in the civil proceeding. See V.T.C.A., Penal Code, Section 25.03.[1]

However, the United States Supreme Court fairly recently decided *United States v. Dixon* which calls into question whether the Double Jeopardy Clause of the United States Constitution bars applicant's criminal prosecution for this criminal offense. See *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The trial court decided it did, the Court of Appeals decided it did not and now we must decide the question.

## I.

*Dixon* contains five plurality opinions and it is difficult if not impossible to determine "the holding of the Court" on some of the issues addressed in *Dixon*. See *Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 1926, 128 L.Ed.2d 745 (1994) (when a fragmented court decides a case and no single

rationale explaining the result enjoys the assent of five Justices, the holding of the court *may* be viewed as that position taken by those members who concurred in the judgments on the narrowest grounds).[2] Under these circumstances, I vote to follow in cases like this Court's decision in *Ex parte Williams* and to adhere to Texas' traditional view that contempt proceedings in civil cases do not implicate double jeopardy principles. See *Ex parte Williams*, 799 S.W.2d 304 (Tex. Cr.App.1990); see also *Dixon*, 113 S.Ct. at 2865, 125 L.Ed.2d at 579 (Rehnquist, C.J., concurring in part and dissenting in part, joined by O'Connor and Thomas, JJ.) (traditional view is that double jeopardy generally does not bar a subsequent prosecution based on conduct that was subject of prior contempt proceeding), and at 2879–81, 125 L.Ed.2d at 597–98 (Blackmun, J., concurring in the judgment in part and dissenting in part) (same).

## II.

Since the majority opinion in this case attempts to determine the "holding of the court" in *Dixon*, I also set out my views on what *Dixon* holds and why *Dixon* does not prohibit applicant's criminal prosecution. In *Dixon*, Dixon's subsequent criminal prosecution and the five-count indictment in Foster's subsequent criminal prosecution were all based on the "same conduct" that was the subject of prior contempt proceedings. See *Dixon*, 113 S.Ct. at 2853–55, 125 L.Ed.2d at 565–66 (Scalia, J.).[3] A majority of the Court decided, as reflected by its judgment, that Dixon's subsequent prosecution and *only one* of the counts in Foster's subsequent prosecution were jeopardy-barred. See *Dixon*, 113 S.Ct. at 2864, 125 L.Ed.2d at 578 (Scalia, J.)

---

1. It is undisputed applicant's criminal prosecution is based on the "same conduct" that was the subject of the prior contempt proceeding in the civil case.

2. This test is more easily stated than applied. See *Nichols*, 114 S.Ct. at 1926.

3. The District of Columbia Court of Appeals consolidated Dixon's and Foster's cases. See *Dixon*, 113 S.Ct. at 2854–55, 125 L.Ed.2d at 566. Dixon's subsequent prosecution was based on the same conduct that was the subject of a prior contempt proceeding. See *Dixon*, 113 S.Ct. at

2853–54, 125 L.Ed.2d at 565 (Scalia, J.). All five counts in Foster's subsequent prosecution were based on the same conduct that was the subject of a prior contempt proceeding. See *Dixon*, 113 S.Ct. at 2853–55, 125 L.Ed.2d at 565–66 (Scalia, J.). That Foster was not found in contempt for some of this conduct in his prior contempt proceeding is irrelevant to the double jeopardy analysis in this "successive prosecution" case. See *Dixon*, 113 S.Ct. at 2853–55, 2857–59, 125 L.Ed.2d at 565–66, 570–71 (Scalia, J.). What is relevant is that Foster was "prosecuted" for this conduct in the prior contempt proceeding. See *id.*

(announcing the Court's judgment that Dixon's subsequent prosecution and Count I of Foster's subsequent prosecution were jeopardy-barred but Counts II–V of Foster's subsequent prosecution were not jeopardy-barred). This lays to rest any claim that the "holding of the court" in *Dixon* is that double jeopardy principles bar a subsequent prosecution "following a contempt proceeding involving the same conduct."

### III.

One of the majority holdings in *Dixon* that explains its judgment is "the protection of the Double Jeopardy Clause" attaches "in nonsummary criminal contempt prosecutions just as they do in other criminal prosecutions." See *Dixon*, 113 S.Ct. at 2856, 125 L.Ed.2d at 568 (Scalia, J., joined by Kennedy, J.), and at 2865, 125 L.Ed.2d at 579 (Rehnquist, C.J., concurring in part and dissenting in part, joined by O'Connor and Thomas, JJ.). Given the facts of Foster's case, this holding effectively makes all "nonsummary criminal contempt"[4] proceedings even those in civil cases the functional equivalent of a "criminal prosecution" for double jeopardy purposes.[5] This majority holding in *Dixon* is an extension of earlier cases which *Dixon* characterizes as holding that contemnors in "nonsummary criminal contempt prosecutions" have various constitutional protections such as presumption of innocence, proof beyond a reasonable doubt, right to jury trial, etc. See *Dixon*, 113 S.Ct.

at 2855–56, 125 L.Ed.2d at 567–68 (Scalia, J.).[6]

Under federal law, the distinction between "civil" and "criminal" contempt is not "easy to classify," but it seems to turn primarily on the severity of the *punishment* assessed. See *Gompers*, 31 S.Ct. at 498 (it is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases), cited to support holding in *Dixon*, 113 S.Ct. at 2856, 125 L.Ed.2d at 568 (Scalia, J.). Similarly, the right to a jury trial in "criminal contempt" proceedings turns on the seriousness of the contemplated *punishment*. See *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 1485–86, 20 L.Ed.2d 522 (1968) (contemnor has right to jury trial when serious punishment for "criminal contempt" is contemplated), cited to support holding in *Dixon*, 113 S.Ct. at 2856, 125 L.Ed.2d at 568 (Scalia, J.).

Based on these authorities, the contempt proceeding in applicant's civil divorce case cannot be characterized as a "criminal contempt prosecution." See *Dixon*, 113 S.Ct. at 2856, 125 L.Ed.2d at 568 (Scalia, J.) (double jeopardy protections apply in "nonsummary criminal contempt prosecutions"). Applicant's $100 fine for violating the trial court's order in the civil divorce proceeding is not a severe *punishment*. See *Bloom*, 88 S.Ct. at 1485–86; *Gompers*, 31 S.Ct. at 498. Since applicant's $100 fine is *de minimis*, his right to a jury trial did not attach in the contempt proceeding in the civil divorce case. See *Bloom*, 88 S.Ct. at 1485–86. Double jeopar-

---

**4.** See generally *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 498–99, 55 L.Ed. 797 (1911) (discussing differences between "civil" and "criminal" contempt).

**5.** Dixon's case was a "criminal contempt prosecution" since he was found "guilty of criminal contempt" in a criminal proceeding to which the Government was a party pursuant to a statute authorizing a criminal "prosecution for contempt of court." See *Dixon*, 113 S.Ct. at 2853–54, 125 L.Ed.2d at 565 (Scalia, J.). The same cannot be said about Foster's case. See *Dixon*, 113 S.Ct. at 2853–54, 2857–58, 125 L.Ed.2d at 565, 570 (Scalia, J.). Foster's case involved contempt proceedings in a civil case. See *id.* Although the Court characterized Foster's route to the Court as similar to Dixon's route, it would appear the roads they traveled were quite different. But see *Dixon*, 113 S.Ct. at 2853–54, 125

L.Ed.2d at 565 (Scalia, J.). Dixon's case was a criminal case. Foster's case was a civil case.

**6.** This holding in *Dixon* does not necessarily follow from the cases cited. See *Dixon*, 113 S.Ct. at 2856, 125 L.Ed.2d at 568 (Scalia, J.). Although "criminal contempt" proceedings in civil cases arguably are close enough to "criminal prosecutions" for purposes of presumption of innocence, proof beyond a reasonable doubt, right to jury trial, etc., it does not necessarily follow they are close enough to criminal prosecutions for purposes of the Double Jeopardy Clause especially where the Government is not a party to these proceedings. See *Dixon*, 113 S.Ct. at 2883, 125 L.Ed.2d at 601 (Souter, J., concurring in the judgment in part and dissenting in part) (setting out core purposes of Double Jeopardy Clause).

dy protections likewise did not attach to this proceeding. See *Dixon*, 113 S.Ct. at 2856, 125 L.Ed.2d at 568 (Scalia, J.) (in "criminal contempt" proceedings double jeopardy protections attach in the same manner that right to jury trial attaches).

## IV.

A majority of the justices in *Dixon* also agreed to overrule *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). See *Dixon*, 113 S.Ct. at 2860, 125 L.Ed.2d at 573 (Scalia, J., joined by Kennedy, J.), and at 2868, 125 L.Ed.2d at 583 (Rehnquist, C.J., concurring in part and dissenting in part, joined by O'Connor and Thomas, JJ.). In overruling *Grady*, a majority of the justices in *Dixon* decided the *Blockburger*[7] "same-elements" test is the sole test for determining "sameness" of offenses in "successive prosecution" cases when the same conduct or act violates two separate statutes. See *Dixon*, 113 S.Ct. at 2856, 2860, 125 L.Ed.2d at 568, 573 (Scalia, J., joined by Kennedy, J.), and at 2865, 125 L.Ed.2d at 579 (Rehnquist, C.J., concurring in part and dissenting in part, joined by O'Connor and Thomas, JJ.).

Justice Scalia's lead opinion applied the *Blockburger* "same elements" test by comparing the "elements" of contempt *and* the terms of the court orders in the contempt proceedings with the elements of the criminal statutes in the subsequent criminal prosecutions. See *Dixon*, 113 S.Ct. at 2856–59, 125 L.Ed.2d at 568–72 (Scalia, J.). Under this application of the *Blockburger* "same-elements" test, Justice Scalia's lead opinion decided Dixon's subsequent prosecution and Count I of Foster's subsequent prosecution were jeopardy-barred because the court or-

ders "incorporated the entire governing criminal code" making the "underlying substantive criminal offense" a "species of lesser-included offense" of the court orders. See *Dixon*, 113 S.Ct. at 2856–57, 125 L.Ed.2d at 569 (Scalia, J.) (analysis for Dixon's subsequent prosecution), and at 2857–58, 125 L.Ed.2d at 570 (Scalia, J.) (analysis for Dixon's subsequent prosecution applies to Count I of Foster's subsequent prosecution). Justice Scalia's lead opinion decided Counts II–V of Foster's subsequent prosecution were not jeopardy-barred under this application of the *Blockburger* test. See *Dixon*, 113 S.Ct. at 2858–59, 125 L.Ed.2d at 571–72 (Scalia, J.).

Justice Rehnquist's opinion claimed, among other things, that this non-traditional application of the *Blockburger* "same-elements" test bore a "striking resemblance to that found in *Grady*" because it focused "on the facts needed to show a violation of the specific court orders involved in [the] case, and not on the generic elements of the crime of contempt of court." See *Dixon*, 113 S.Ct. at 2865–67, 125 L.Ed.2d at 579–81 (Rehnquist, C.J., concurring in part and dissenting in part). Justice Rehnquist's opinion claimed a traditional application of the *Blockburger* "same-elements" test focuses on the "generic" or "statutory elements" of the crimes charged. See *id.* Justice Rehnquist's opinion claimed this traditional application of the *Blockburger* test did not bar any of the subsequent criminal prosecutions because "the elements of the governing contempt *provision*" were "entirely different from the elements of the substantive crimes." See *Dixon*, 113 S.Ct. at 2865–67, 125 L.Ed.2d at 579–81 (Rehnquist, C.J., concurring in part and dissenting in part) (emphasis in original).[8]

---

7. See *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (when the "same act or transaction" violates "two distinct *statutory provisions*," the applicable test to determine whether there are two offenses or only one is whether "each *provision* requires proof of an additional fact which the other does not"). (Emphasis Supplied).

8. *Dixon*, 113 S.Ct. at 2866, 125 L.Ed.2d at 580–81 (Rehnquist, C.J., concurring in part and dissenting in part):
   "Applying [the traditional *Blockburger* "same-elements" test] to the offenses at bar, it is clear that the elements of the governing contempt

*provision* are entirely different from the elements of the substantive crimes. Contempt of court comprises two elements: (i) a court order made known to the defendant, followed by (ii) willful violation of that order. (Citations Omitted). Neither of those elements is necessarily satisfied by proof that a defendant has committed the substantive offenses of assault or drug distribution. Likewise, no element of either of those substantive offenses is necessarily satisfied by proof that a defendant has been found guilty of contempt of court." (Emphasis in Original).

Justice Rehnquist's position that none of the subsequent criminal prosecutions were jeopardy-barred obviously did not receive a majority of the votes although Justice Souter's opinion, which claimed double jeopardy principles barred all of the subsequent prosecutions, agreed with Justice Rehnquist's opinion on how to apply *Blockburger.* See *Dixon,* 113 S.Ct. at 2881–83, 125 L.Ed.2d at 599–601 (Souter, J., concurring in the judgment in part and dissenting in part) (the *Blockburger* test emphasizes the elements of the two crimes which involve only a question of statutory construction). But, contrary to the positions taken in Justice Rehnquist's and Justice Scalia's opinions, Justice Souter's opinion claimed *Blockburger* "is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Dixon,* 113 S.Ct. at 2883–84, 125 L.Ed.2d at 601–02 (Souter, J., concurring in the judgment in part and dissenting in part).[9]

Therefore, it appears at least five justices in *Dixon* also agreed to overrule *Grady* and to make the *Blockburger* "same-elements" test the only test for determining "sameness" of offenses in "successive prosecution" cases when the same conduct violates two separate statutory provisions. See *Dixon,* 113 S.Ct. at 2855–56, 125 L.Ed.2d at 567–68 (Scalia, J., joined by Kennedy, J.), and at 2865–66, 125 L.Ed.2d at 579–80 (Rehnquist, C.J., concurring in part and dissenting in part, joined by O'Connor and Thomas, JJ.). It also appears at least five justices in *Dixon* agreed that *Blockburger* should be applied the way Justice Rehnquist's opinion says it should be applied by focusing on the "generic" or "statutory elements" of the crimes charged and that this application of *Blockburger* barred none of the subsequent prosecutions in *Dixon.* See *Dixon,* 113 S.Ct. at 2865, 125 L.Ed.2d at 579 (Rehnquist, C.J., concurring in part and dissenting in part, joined by O'Connor and Thomas, JJ.) (*Blockburger* focuses on "statutory elements" of the crimes

charged), and at 2881–82, 125 L.Ed.2d at 599 (Souter, J., concurring in the judgment in part and dissenting in part, joined by Stevens, J.) (*Blockburger* "emphasizes the elements of the two crimes").

However, Justice Scalia's opinion is the "holding of the court" since it contains the narrowest grounds that explains or supports the Court's judgment in *Dixon.* See *Nichols,* 114 S.Ct. at 1926 (Scalia, J.).[10] Under Justice Scalia's opinion and assuming the contempt proceeding in applicant's civil divorce case is a "criminal contempt prosecution," [11] if applicant's criminal prosecution for interference with child custody is jeopardy-barred, it has to be because the "underlying substantive criminal offense [of interference with child custody] is a species of lesser-included offense" of the terms of the court's order in the civil divorce case. See *Dixon,* 113 S.Ct. at 2856–57, 125 L.Ed.2d at 569 (Scalia, J.). In other words, the issue is whether the court order in the civil divorce case incorporated the entire criminal offense of interference with child custody. See *id.*

The majority opinion in this case apparently agrees that Justice Scalia's opinion contains the "holding of the court." The majority opinion decides applicant's criminal prosecution for interference with child custody is jeopardy-barred under Justice Scalia's analysis because this criminal offense incorporates the terms of the civil court's custody order making it a "lesser included offense" of the criminal offense of interference with child custody. See *Ex parte Rhodes,* 974 S.W.2d 735, 741 (Tex.Cr.App. delivered this date) (under Justice Scalia's analysis, terms of court's order is "lesser included offense" of the penal code provision).

In other words, the majority opinion decides the criminal offense of interference with child custody incorporates the terms of the court order in the civil divorce case. See *id.* This is just the opposite of the analysis

---

9. Therefore, it appears Justice Souter agreed that none of the subsequent criminal prosecutions were jeopardy-barred under a traditional application of the *Blockburger* "same-elements" test.

10. Judge Keller's concurring opinion relies on Justice Rehnquist's opinion to decide applicant's criminal prosecution for interference with child

custody is jeopardy-barred. However, Justice Rehnquist's opinion does not contain the "holding of the court" under the test set out in *Nichols.*

11. See Section III, *supra.*

in Justice Scalia's opinion which held Dixon's subsequent prosecution and Count I of Foster's subsequent prosecution were jeopardy-barred because the criminal offenses in those prosecutions were a "species of lesser-included offense" of the court orders. See *Dixon,* 113 S.Ct. at 2856–57, 125 L.Ed.2d at 569, 570 (Scalia, J.) (court orders incorporated entire governing criminal code).

Under Justice Scalia's analysis and assuming applicant's contempt proceeding in the civil divorce case is a "criminal contempt prosecution,"[12] applicant's criminal prosecution for interference with child custody is not jeopardy-barred. The terms of the court order required the child to reside in Harris County and enjoined applicant from changing the child's county of residence without prior court approval. The elements of the offense of interference with child custody are (1) taking or retaining a child younger than 18 years (2) when the defendant knows that his taking or retention violates the express terms of a judgment or order of a court disposing of the child's custody. See Section 25.03.

Applicant's "criminal contempt prosecution" required a change of the child's county of residence without prior court approval which conviction under Section 25.03 did not, and conviction under Section 25.03 requires taking or retaining the child which "conviction" of the contempt (for violating the order not to change the child's county of residence without prior court approval) did not. Compare *Dixon,* 113 S.Ct. at 2859, 125 L.Ed.2d at 572 (Scalia, J.). In other words, the terms of the court order did not incorporate "the entire governing criminal code" making the "underlying substantive criminal offense" a "species of lesser-included offense" of the terms of the court order. See *Dixon,* 113 S.Ct. at 2856–57, 125 L.Ed.2d at 569 (Scalia, J.). Therefore, under Justice Scalia's analysis, applicant's criminal prosecution for interference with child custody is not jeopardy-barred.[13]

## V.

Notwithstanding the foregoing and assuming applicant's contempt proceeding in the civil divorce case and his subsequent criminal prosecution for interference with child custody involve the "same offense" under the *Blockburger* test, I would not characterize this case as a "successive prosecution" case. See *Dixon,* 113 S.Ct. at 2856, 125 L.Ed.2d at 568 (Scalia, J.) (double jeopardy protection applies both to "successive punishments" and to "successive prosecutions" for the "same criminal offense"). Instead, I would characterize this case as a "successive punishments" case. See *id.*[14] The double jeopardy analysis changes depending on whether the case is characterized as a "successive prosecution" case or as a "successive punishments" case.

If this is a "successive prosecution" case and applicant's contempt proceeding and his

---

**12.** See Section III, *supra.*

**13.** In support of its holding the court order in the civil divorce case is a "lesser included offense" of the penal code provision defining the elements of interference with child custody, the majority opinion states "if one changes a child's county of residence, one always takes or retains the child." However, this misapplies Justice Scalia's *Blockburger* analysis and it does not correctly state the "lesser included offense" test under our state law. See Article 37.09, V.A.C.C.P. (defining lesser included offenses); *Hopkins v. Reeves,* —— U.S. ——, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998) (federal constitution does not require state trial courts to instruct jury in a capital case on offenses that, under state law, are not considered lesser included offenses with respect to the charged crime).

Proving a change of the child's county of residence without prior court approval is not *required* to establish the first element of interference with child custody. See Article 37.09(1); *Hopkins,* —— U.S. at ——, 118 S.Ct. 1895 (federal courts defer to state law definitions of lesser included offenses). Therefore, the penal code provision defining the elements of interference with child custody does not incorporate the court order in the civil divorce case. In other words, the court order in the civil divorce case is not a "lesser included offense" of the penal code provision defining the elements of interference with child custody. See Article 37.09(1).

**14.** This also is sometimes referred to as "multiple punishments." See *Dixon,* 113 S.Ct. at 2856, 125 L.Ed.2d at 568 (Scalia, J.) (in both the "multiple punishment" and "multiple prosecution" contexts, where the two offenses for which the defendant is punished or tried cannot survive the *Blockburger* "same-elements" test, the double jeopardy bar applies).

criminal prosecution involve the "same offense" under the *Blockburger* test, then double jeopardy bars applicant's criminal prosecution. See *Dixon*, 113 S.Ct. at 2855, 125 L.Ed.2d at 567 (Scalia, J.) (double jeopardy protects against "successive prosecutions" for the "same criminal offense"). However, if this is a "successive punishments" case and applicant's contempt proceeding and his criminal prosecution involve the "same offense" under the *Blockburger* test, then the issue becomes whether applicant's $100 fine in the contempt proceeding is a "criminal punishment." See *Dixon*, 113 S.Ct. at 2855, 125 L.Ed.2d at 567 (Scalia, J.) (double jeopardy applies to "successive punishments" for the "same criminal offense"); see also *Hudson v. United States*, — U.S. —, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). If this fine is not a "criminal punishment," then double jeopardy does not bar applicant's criminal prosecution. See *id.*

I would hold this is a "successive punishments" case. See *Dixon*, 113 S.Ct. at 2855, 125 L.Ed.2d at 567 (Scalia, J.). A contempt proceeding in a civil divorce case between two private parties is not a "criminal prosecution" in any sense of the word. The Court in *Dixon* seemed uncritically to treat both Dixon's and Foster's cases as "successive prosecution" cases. See also Footnote Five of this Opinion, *supra*.[15]

Since this is a "successive punishments" case, the issue is whether applicant's $100 fine in the contempt proceeding is a "criminal punishment." See *Hudson*, 118 S.Ct. at 493(in "successive punishments" cases, the Double Jeopardy Clause protects only against the imposition of "multiple criminal punishments" for the "same offense"). It is not dispositive for double jeopardy purposes that under our state law[16] contempt proceedings in cases like this are commonly labeled as "criminal contempt" and as "punishment" for violating a court's order. See *Hudson*, 118 S.Ct. at 493(Double Jeopardy Clause

does not prohibit imposition of additional sanction that could in "common parlance" be labeled as "punishment"); *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988) (labels "criminal" or "civil" are not dispositive); *Gompers*, 31 S.Ct. at 498 (contempts are neither wholly civil nor altogether criminal and it is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between "civil" and "criminal" contempt).

Criminal contempt under our state law in cases like this is primarily used to enforce a trial courts orders. The threat of criminal contempt under our state law encourages compliance with the trial court's orders. And, this is the intent expressed in relevant provisions of Texas' Family Code. See, e.g., Texas Family Code, Section 157.001(b) (court may enforce by contempt a final order for possession of and access to a child); Tex.Fam.Cd., Section 157.002(d) (movant not required to plead that underlying order is enforceable by contempt to obtain other appropriate enforcement remedies); see also *Hudson*, 118 S.Ct. at 493 (whether a particular punishment is criminal or civil is initially a matter of statutory construction). Moreover, a $100 fine cannot be considered "criminal punishment" either "in purpose or effect." See *Hudson*, 118 S.Ct. at 493.

Based on the *Hudson* factors, I would hold applicant's $100 fine in the contempt proceeding is not a "criminal punishment." See *Hudson*, 118 S.Ct. at 493. Therefore, applicant's criminal prosecution is not jeopardy-barred. This gives effect to and in no way ignores the majority holding in *Dixon* "that the protection of the Double Jeopardy Clause" attaches "in nonsummary criminal contempt prosecutions just as they do in other criminal prosecutions." See *Dixon*, 113 S.Ct. at 2856, 125 L.Ed.2d at 568 (Scalia, J.).

Finally, holding applicant's criminal prosecution is not jeopardy-barred does not frus-

---

**15.** Dixon's case arguably was a "successive prosecution" case since he was found "guilty of criminal contempt" in a proceeding to which the Government was a party pursuant to a statute authorizing a "prosecution for contempt of court." See *Dixon*, 113 S.Ct. at 2853–54, 125 L.Ed.2d at 565 (Scalia, J.). The same cannot be

said about Foster's case. See *Dixon*, 113 S.Ct. at 2853–54, 2857–58, 125 L.Ed.2d at 565, 570 (Scalia, J.).

**16.** See *Ex parte Chambers*, 898 S.W.2d at 259–60.

trate the core purposes of the Double Jeopardy Clause. The Government has not made "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." *Dixon,* 113 S.Ct. at 2883, 125 L.Ed.2d at 601 (Souter, J., concurring in the judgment in part and dissenting in part). And, the Government has not had the opportunity "to rehearse its prosecution, honing its trial strategies and perfecting its evidence through successive attempts at conviction." *Id.*

I respectfully dissent.

MANSFIELD, J., joins this dissent.